**Kathy KENDALL, Appellant,**

v.

**WHATABURGER, INC., and Isaac King Ervin, Appellees.**

No. 01–87–00106–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 20, 1988.

Michael Kerensky, John M. O'Quinn & Assoc., Houston, for appellant.

John H. Williams, Williams and Smith, Neal H. Paster, Paster & Archer, Houston, for appellees.

Before LEVY, WARREN and DUGGAN, JJ.

## OPINION

LEVY, Justice.

This is an appeal from both a partial summary judgment and a take-nothing jury verdict on the remaining issue at trial.

Appellant and a group of her friends stopped at a Whataburger restaurant. Appellant ordered some food, and became dissatisfied with either the food or the service,

or both. She voiced her complaint to Isaac Ervin, a young employee working behind the service counter. Shortly thereafter, appellant was struck in the face with hot grease and a metal french fry basket wielded by Ervin. She subsequently brought suit to recover damages for the wrongful actions of the employee, the vicarious liability of the employer ("Whataburger"), and the negligent hiring and supervision of Ervin by Whataburger.

Whataburger received a partial summary judgment on the issues of course and scope of employment and negligent hiring. The parties proceeded to trial on the sole remaining issue of negligent supervision. The jury found in Whataburger's favor that there was no negligence in its supervision of Ervin.

Appellant asserts in her first point of error that the trial court erred in granting Whataburger's motion for partial summary judgment because no competent summary judgment evidence was submitted in support of the motion. Appellant also avers that her timely filed response and affidavit raised issues of fact regarding employee Ervin's course and scope of employment and negligent hiring by appellee. She argues that these issues required trial before a jury, thus causing the partial summary judgment to be inappropriate.

The only summary judgment proof offered by Whataburger was the affidavit of Pete Opel, Vice President for Personnel of Whataburger, Inc. We review it in the light of Rule 166a(e).

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.... Defects in the form of affidavits or attachments will not be grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend.

Tex.R.Civ.P. 166a(e).

The question on appeal, as well as in the trial court, is not whether the summary judgment proof raises fact issues with reference to the essential elements of the claim or cause of action, but whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970).

The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. On appeal, in deciding whether or not there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Wilcox v. St. Mary's Univ. of San Antonio, Inc.,* 531 S.W.2d 589, 592–93 (Tex.1975). Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Id.; J.C. Kinley Co. v. Haynie Wire Line Serv., Inc.,* 705 S.W.2d 193, 195 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

Opel's sworn affidavit in support of appellees' motion for partial summary judgment reads in pertinent part:

BEFORE ME, the undersigned authority, personally appeared PETE OPEL, who being known to me, and being duly sworn, deposes and says:

1. That, I am vice president of Personnel for Whataburger, Inc.

2. That, Isaac King Ervin was an employee of Whataburger, Inc. on November 28, 1981.

3. That, before Isaac King Ervin was hired, he represented that he was 18 years old, had never been convicted of any crimes, and that he had worked for McDonald's for five months as a cashier and cook.

4. That, Isaac King Ervin was employed by Whataburger, Inc. for 31 days prior to November 28, 1981 and during that time was a satisfactory employee who was not involved in any unusual incidents.

Opel's affidavit does not comply with the requirements of rule 166a(e) because it fails to "positively and unqualifiedly repre-

sent the 'facts' as disclosed in the affidavit to be true and within his personal knowledge" and, therefore, does not constitute competent summary judgment proof. *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984).

Appellant specifically and timely pointed out this defect in Opel's affidavit in her objections to Whataburger's motion for summary judgment. Whataburger thus had ample opportunity to cure this defect but failed to do so.

Whataburger argues that the contents of its summary judgment motion were sworn to by its attorney and that appellant never objected to the attorney's affidavit before the granting of the summary judgment. Hence, Whataburger contends, all assertions contained in the sworn summary judgment motion, even if hearsay, constitute sufficient proof to support a summary judgment. However, it is well settled in Texas that sworn pleadings are not summary judgment evidence. *Americana Motel, Inc. v. Johnson,* 610 S.W.2d 143 (Tex.1980). A motion for summary judgment is a pleading and may not itself be considered as summary judgment evidence. *See Barrow v. Jack's Catfish Inn,* 641 S.W.2d 624, 625 (Tex.App.—Corpus Christi 1982, no writ). Pleadings are to be ignored when determining whether or not to grant a motion for summary judgment. As this Court has previously stated, "[i]n measuring summary judgment evidence, pleadings, even if sworn to, do not constitute summary judgment proof." *J.C. Kinley Co.,* 705 S.W.2d at 195 (cite omitted).

The trial court erred in granting Whataburger a partial summary judgment on the issue of negligent hiring because Whataburger offered no competent proof in support of its motion.

Concerning the issue of whether Ervin's assault on appellant occurred within the course and scope of his employment, appellant relied on *Houston Transit Co. v. Felder,* 146 Tex. 428, 208 S.W.2d 880 (1948), in her response to appellees' motion for summary judgment. In *Felder,* the Texas Supreme Court held that

the master is liable for ... any act of the servant which, if isolated, would not be imputable to the master, but which is so connected with and immediately grows out of another act of the servant imputable to the master, that both acts are treated as being one indivisible tort, which, for the purposes of the master's liability, takes its color and quality from the earlier act.

*Felder,* 208 S.W.2d at 881.

Appellant contended in her response to motion for summary judgment that Ervin was carrying out his master's duties, i.e., "serving hamburgers," when he struck the plaintiff with the french fry basket. His tortious actions were therefore committed before he had finished his master's business. The tortious act occurred when the tortfeasor was behind the counter and the plaintiff was in front of the service counter on premises owned by Whataburger, where the employee was actually working. Appellant asserts that the facts of the case before the Court clearly show that, as a matter of law, Ervin was within the course and scope of his employment when he committed the tortious act and, therefore, under *Felder,* the master would be responsible for the acts of servant.

However, as the Texas Supreme Court held in *Texas & Pac. Ry. Co. v. Hagenloh,* 151 Tex. 191, 197–98, 247 S.W.2d 236, 239–40 (1952),

It is not ordinarily within the scope of a servant's authority to commit an assault on a third person.... Usually assault is the expression of personal animosity and is not for the purpose of carrying out the master's business.

The nature of the employment may be such as necessarily to involve at times the use of force, as where the employee's duty is to guard the employer's property and to protect it from trespassers, so that the act of using force may be in furtherance of the employer's business, making him liable even when greater force is used than is necessary.... [T]he master may be liable for the act of the servant even though the master has expressly forbidden the particular

act.... 'But the act must be done within the scope of the general authority of the servant. It must be done in furtherance of the master's business, and for the accomplishment of the object for which the servant is employed.' (Citations omitted).

In reviewing Whataburger's motion for summary judgment, the court also had before it appellant's response to Whataburger's motion and her supporting affidavit. A review of appellant's response and affidavit reveal that, as a matter of law, there was no genuine issue of fact as to whether Ervin was acting within the course and scope of his employment when he assaulted appellee with the greasy hot french fry basket. Such an assault by Ervin could not possibly have been so connected with and immediately arising out of his job of taking food orders, and preparing and delivering food orders to customers, that his authorized employment tasks and the assault could have merged into one indivisible tort, imputable to the master, Whataburger.

We conclude that it was not erroneous for the trial court to have granted Whataburger a partial summary judgment on the issue of Ervin's course and scope of employment. Appellant's first point of error is sustained as to the issue of negligent hiring, but is overruled as to the issue of course and scope of employment.

In her second point of error, appellant urges that the trial court erred in denying her a new trial because outside influences were improperly brought to bear upon the jurors.

Appellant complains that in the case at bar the presiding juror was a paralegal who stated, during jury deliberations, that even though the negligence and proximate cause issues were answered in the negative, appellant would still recover the damages assessed by the jury. Appellant presented affidavits to support this claim and to prove that, but for the statements of the paralegal juror, five other jurors would not have voted "No" to the negligence and proximate cause issues, but instead would have voted "Yes."

■ Both the Texas Rules of Civil Procedure and the Texas Rules of Evidence prohibit jurors from testifying about matters or statements that occurred during the course of their deliberations. Tex.R.Civ.P. 327(a) and Tex.R.Evid. 606(b). The thrust of both rules is illustrated by the language of rule 606(b), which provides in pertinent part that:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

Tex.R.Evid. 606(b).

■ Under both of these rules, all testimony, affidavits, and other evidence is excluded from consideration by the court when an issue as to jury misconduct is raised *unless* it is shown that an "outside influence wás improperly brought to bear upon any juror." Tex.R.Civ.P. 327(b); Tex. R.Evid. 606(b); *Robinson Elec. Supply Co. v. Cadillac Cable Corp.* 706 S.W.2d 130, 131–32 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).

■ Appellant argues that the paralegal juror's claimed expertise and knowledge of the law, when directed at the other jurors, amounted to an "outside influence," thus bringing her statement within the exception allowed under rules 327(b) and 606(b).

However, it has been held in Texas that any "outside influence" must not only arise from information and expertise not in evidence but also emanate from *outside* the jury and its deliberations. *Clancy v. Zale Corp.*, 705 S.W.2d 820, 829 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *see also Daniels*

*v. Melton Truck Lines, Inc.*, 704 S.W.2d 142 (Tex.App.—Eastland 1986, writ ref'd n.r.e.); *Robinson Elec. Supply*, 706 S.W.2d at 130. Thus, since the 1984 rule changes, comments or statements made by a juror to the other jurors during the course of their deliberations are internal to the jury's deliberations and do not amount to the requisite "outside influence."

Having failed to allege and prove the existence of an actual "outside influence" as required by rules 327(b) and 606(b), appellant's second point of error is overruled.

■■■ Appellant avers in her fifth point of error that the trial court erred and abused its discretion in restricting the voir dire examination of the jury panel, by hurrying up the lawyers, making offensive statements to counsel in the presence of the jury, and otherwise pressuring counsel to quickly finish the voir dire, thereby not allowing counsel an opportunity to conduct a full and complete examination or to make an informed decision on jury strikes.

A review of the record reflects that the trial judge initially asked the attorneys before him to limit their voir dire to 30 minutes. Appellant's counsel protested that this was not enough time. Throughout the course of the voir dire, the trial judge did allow appellant's counsel additional time. In fact, appellant's voir dire of the jury panel lasted approximately 2-½ hours and encompasses 119 pages of the statement of facts. For the sake of comparison, appellees' voir dire is contained in 15 pages of the statement of facts.

Appellant's trial counsel concluded his voir dire questioning by saying, "I think that's where I'm ready to stop." He did not indicate that he wanted to continue the voir dire, and did not ask for any additional time. Nor did he make a bill of exceptions showing any questions that he was unable to ask because of any lack of time.

Any error that may have existed was waived by appellant when it was not properly preserved and brought forward for our review.

Appellant's fifth point of error is overruled.

■■ Appellant's third, fourth, sixth, and seventh points of error will be considered together. Appellant asserts that the trial court erred in denying her a new trial, and that the judgment of the trial court must be reversed, because the evidence was both factually and legally insufficient to support the jury's finding of no negligence in its answer to Special Issue No. 1.

Special Issue No. 1 asked, "Do you find from a preponderance of the evidence that Whataburger, Inc., acting by and through its management personnel, negligently supervised the operation of the Whataburger restaurant on the occasion in question?" The jury answered, "We do not."

Two separate standards of review apply to attacks on sufficiency of the evidence:

In reviewing legal insufficiency points or "no evidence" points, we must consider only the evidence tending to support the finding, viewing it in the light most favorable to the finding, giving effect to all reasonable inferences that may properly be drawn from that evidence, and disregarding all contrary or conflicting evidence. A "no evidence" point must be sustained if we find a complete absence of evidence of probative force or only a scintilla of evidence to support the finding, or if the evidence tending to support the finding must be disregarded because it is legally incompetent. If there is more than a scintilla of probative evidence to support the finding, the point must be overruled.

In reviewing factual insufficiency points, we must consider all of the evidence in the record that is relevant to the fact finding being challenged. We must sustain a "factual insufficiency" point if we determine that the finding of a vital fact is so contrary to the great weight and preponderance of the evidence as to be clearly wrong.

*Texaco, Inc. v. Pennzoil Co.*, 729 S.W.2d 768, 787 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.) (citations omitted).

The jury, as the trier of fact, is the sole judge of the credibility of the witnesses

and is entitled to accept or reject any or all of the testimony it chooses, as well as to decide what weight to assign the testimony. *Texaco v. Pennzoil*, 729 S.W.2d at 791.

The issue of whether Whataburger, acting by and through its management personnel, was negligent in its supervision of its employees was vigorously contested. Michael Boucher, assistant manager in charge of the restaurant on the night in question, testified both in person and by deposition. He said that he had been employed by Whataburger as an assistant manager for two to three months before the incident concerning appellant occurred, and that he had worked for Sambo's Restaurant as an assistant manager for about nine months before that. Boucher testified that on the evening in question, he was present at the restaurant at all times relevant to this case. He said that he was in the front of the restaurant behind the counter when appellant and her friends entered the restaurant and placed their order. Boucher testified that he then went into the office, some distance from the front counter and behind the refrigeration unit, to telephone a nearby Whataburger about "borrowing" additional crew members. He heard a commotion in the front of the restaurant, hung up the telephone, and returned to the front as quickly as possible. Boucher testified that there were only a few customers in the restaurant when he went back to use the telephone and that he was gone only a few minutes.

Boucher also testified that he had often worked with Isaac Ervin, and had had ample opportunity to observe his interaction with the customers. He testified that Ervin had always been a good employee and that he had never given him any indication of one day becoming a problem employee. Boucher denied that he was outside or in anyway absent from the Whataburger restaurant at any point during the incident in question.

Timothy Mullis was an off-duty Harris County Sheriff's Department reserve deputy in November, 1981, when the incident occurred. He testified that he was present in the restaurant at the time of the incident and that none of the events leading up to the confrontation between Ervin and appellant led him to believe that a violent altercation was about to ensue. There was no warning, he testified, and no time to react.

The jury thus heard testimony that the trained manager, Michael Boucher, was present at all relevant times in the building, and that his absence from the front of the store at the time of the altercation was not due to neglect or carelessness, but was directly related to his management duties at the restaurant. The jury also heard testimony that Boucher had no reason to believe that any disturbances involving Ervin would erupt during his brief absence from the front service area of the restaurant. Further, the jury heard from Mullis that the incident occurred without warning.

After reviewing all the evidence in the record, we conclude that there was more than a mere scintilla of evidence to support the jury's "no negligence" finding as to Special Issue no. 1, and that the jury's answer was not so contrary to the great weight and preponderance of the evidence as to be clearly wrong.

We also conclude that the evidence was both legally and factually sufficient to support the trial court's judgment, and that the trial court did not err in refusing to grant appellant's motion for new trial.

Appellant's third, fourth, sixth, and seventh points of error are overruled.

The judgment of the trial court is affirmed except as to the partial summary judgment on the issue of negligent hiring, which is reversed, and the cause is remanded for trial on that issue alone.