**John Henry HANCOCK, Independent Executor of the Estate of Ella A. Saenz, Deceased, and May Hancock, Appellants,**

v.

**CITY OF SAN ANTONIO, Texas; City Public Service Board of the City of San Antonio, and Fisher Controls International, Inc., Appellees.**

No. 04–89–00258–CV.

Court of Appeals of Texas, San Antonio.

Oct. 10, 1990.

Rehearing Denied Dec. 18, 1990.

William E. Hornbuckle, Ronald L. Clark, Hornbuckle & Clark, San Antonio, for appellants.

Richard C. Danysh, Judith R. Blakeway, Matthews & Branscomb, John Milano, Jr., Aimee Kolze, Thornton, Summers, Biechlin, et al., San Antonio, for appellees.

Before BUTTS, CHAPA and CARR, JJ.

## OPINION

CHAPA, Justice.

This is an appeal from a wrongful death, survival action resulting from the death of Ella Saenz, who died from injuries received in an explosion at the Chateau Orleans Apartments in San Antonio, Texas. Her estate and daughter, Mae Hancock, sued the owners of the apartments, Brentwood Financial Corporation, the City of San Antonio and its agent City Public Service Board (CPS), the gas supplier, and Fisher Controls (Fisher), the manufacturer of a gas pressure regulator, alleging negligence actions and product liability/strict liability claims.

The appellants settled with the apartment owners prior to trial and the trial court granted partial summary judgment for the city and CPS on the products liability/strict liability claim as well as on other causes of action not made the subject of this appeal. The negligence cause of action was tried to a jury which found the owners of the apartment 80% negligent, the deceased 15% negligent, and the daughter, Mae Hancock, 5% negligent. Moreover, the jury awarded no damages.

The dispositive issues before us are:

1. whether appellant Mae Hancock, daughter of the deceased, could be contributorily negligent, and if not, was such a finding by the jury harmful error under the attending circumstances; and

2. whether the court erred in entering partial summary judgment which dismissed the appellants' cause of action for products liability against the City of San Antonio and its agent, CPS.

The appellants initially argue that appellant Mae Hancock, daughter of the deceased, had no duty to act or protect against the danger of an explosion and, therefore, a finding of contributory negligence, as to her, was error. The only evidence that might indicate that Mae Hancock was negligent was her own testimony. Ella Mae Hancock, daughter of Ella Saenz, testified that her mother was 64 and widowed at the time of her death. On cross-examination, she testified that she would visit her mother about every weekend and, when she did so, she occasionally smelled natural gas. She testified that she had talked to her mother about the smell and her mother told her that she had reported the gas smell to the apartment managers. Mae Hancock testified that she checked some of the things, including the stove and the furnace. However, she testified that she did not open up and look at the contents or components of the furnace because she had no idea how a furnace worked. She testified that her mother told her that other tenants were complaining about the smell of gas and that "some of them were irritated about the fact that it hadn't been resolved." She stated that during the three year period that she visited her mother at the apartment, she never called the City of San Antonio about looking into the problem, nor did she call CPS to have them try and detect where the leaks were. She

stated that her mother was considering moving out of the apartment because of "a problem with the bathroom that she was upset about."

Negligence is based on the violation of a duty toward someone. When no duty exists, no legal liability can arise on account of negligence. *See Abalos v. Oil Dev. Co. of Texas*, 544 S.W.2d 627, 631 (Tex.1976). The action or omission complained of must be wrongful in that it involves the breach of some duty which the alleged wrongdoer owes to the injured party at the time the injury was inflicted. *Webb v. City of Lubbock*, 380 S.W.2d 135, 136 (Tex.Civ.App.—Amarillo 1964, writ ref'd n.r.e.). Whether or not a legal duty exists under a given state of facts is essentially a question of law to be determined by the court. *Id.*

> Texas still follows a general rule that Texans do not owe others general amorphous legal duties. The rule in Texas still distinguishes between moral and legal duties. Although one may have a moral duty to prevent a blind person from crossing a busy street against a light, a person has no legal duty to do so unless additional factors exist. These other factors include the existence of familial or voluntary relationships which impose a duty, statutes or ordinances which may legally require action, or special circumstances, such as having placed the blind man in his precarious position in the first place.

Kilgarlin & Sterba–Boatwright, *The Recent Evolution of Duty in Texas*, 28 S.TEX.L. REV. 241, 245 (1986).

Thus, one person is under no duty to control the conduct of another, even if he has the practical ability to exercise such control. *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex.1983), *citing*, RESTATEMENT (SECOND) of TORTS § 315 (1965). Relationships that may, as a matter of law, impose certain duties upon parties include the duty of a parent to control the conduct of his child, the duty of a master to control the conduct of a servant, the duty of a possessor of land or chattels

to control the conduct of a licensee, the duty of those in charge of a person having dangerous propensities and the duty of a person having custody of another to control the conduct of third persons, none of which are applicable under these facts. *See Otis* at 309; RESTATEMENT (SECOND) of TORTS §§ 316–20 (1965). One may also voluntarily enter an affirmative course of action affecting the interests of another which would be regarded as assuming a duty to act with reasonable care. *Otis* at 309. This exception is also inapplicable under these facts.

Texas courts have held that "if a person knows that gas is escaping into his home from the main of a gas company, it is his duty to take suitable precaution for *his* safety. *Gray v. Enserch, Inc.*, 665 S.W.2d 601, 605 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.) (emphasis added). "[I]t would be his duty to notify the company of the leak." *Id.* However, appellees cite no Texas cases, and we have found none, that hold that a third party has a duty to notify the company of a suspected leak purely on behalf of another.

Nevertheless, appellees, citing *Jackson v. Associated Developers of Lubbock*, 581 S.W.2d 208 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.), and *Moody v. City of Galveston*, 524 S.W.2d 583 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.), argue that appellant Mae Hancock may be held negligent because "a plaintiff is under a duty to exercise that degree of care *for his own safety* as a reasonably prudent person would or should exercise under the same or similar circumstances." (Emphasis added.) This contention is obviously inapplicable here because Mae Hancock's own safety was not at issue. Appellees further argue that "Mae Hancock owed a legal duty of reasonable care to herself for her own safety and welfare *as well as to others*," but cite no authority for this proposition, and our search has revealed none. Appellees also assert that whether "she owed a legal duty to her mother, beyond a moral duty, is irrelevant to the question

[sic] whether she was contributorily negligent." We disagree, for it is clear that negligence is based on a violation of a duty. *See Abalos*, 544 S.W.2d at 631.

The cases relied on by appellees are easily distinguishable. All of the cases cited for the proposition that appellant Mae Hancock owed a duty, involve situations in which the plaintiff, who was found to be contributorily negligent, was the actual injured party. None of the cases cited involved a situation, as we have under these facts, in which a plaintiff was held to be contributorily negligent for injuries suffered by a third party.

We hold that, under these facts, Mae Hancock had no legal duty to control the actions of her deceased mother, nor to notify appellees of a suspected leak. Therefore, there being no legal duty upon Mae Hancock, no premise exists to find her contributorily negligent. We sustain appellants' first point of error. However, before a determination is made of whether this court should reverse the trial court's judgment based upon the error in submitting issues inquiring as to whether Mae Hancock could be found contributorily negligent, "the appellate court [must] be of the opinion that the error complained of amounted to such a denial of the rights of appellant as was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case. . . ." TEX.R.APP.P. 81(b)(1).

■■■■ "Where the jury has answered special issues on liability in the negative, the failure of the jury to award damages is not error," *Johnson v. Whitehurst*, 652 S.W.2d 441, 449 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.), and "in the absence of liability, the question of damages becomes immaterial." *Turner v. Lone Star Indus., Inc.*, 733 S.W.2d 242, 246 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). Likewise, "the general rule [is] that where the jury finds no dam-

ages, findings on issues of liability are immaterial and harmless." *Canales v. Nat'l Union Fire Ins. Co.*, 763 S.W.2d 20, 23 (Tex.App.—Corpus Christi 1988, writ denied). Further, where there is error in the submissions or definitions relating to the liability question, the error is harmless if the net result nevertheless is that the complaining party recovers zero damages. *Id.* Moreover, where "[n]o party appeals from the trial court's judgment insofar as it disposes of the actions by and against [a particular party], [t]he trial court's judgment as to them is affirmed and need not be tried again." *George v. Vick*, 686 S.W.2d 99, 100 (Tex.1984).

The record before this court reflects that the jury found no negligence as to the City of San Antonio, its agent CPS, and Fisher; that the owners of the apartment were 80% negligent; that the deceased was 15% negligent; and that the appellant was 5% negligent. We have agreed that there was no premise to find appellant negligent, and the trial court erred in submitting a negligence issue including her as a possible negligence contributor. However, the record also reflects that no appeal has been taken as to or by the owners of the apartment insofar as the trial court's judgment disposes of the action against them, and as to them the judgment must be affirmed. *George*, 686 S.W.2d at 100. Further, the record shows that the owners of the apartment settled and were released by the appellant prior to trial.

TEX.CIV.PRAC. & REM.CODE ANN. § 33.015 [1], applicable here, provides:

If an alleged joint tort-feasor settles with a claimant but is joined as a party defendant when the case is submitted to the jury so that the existence and amount of his negligence are submitted to the jury and his percentage of negligence is found by the jury, the settlement is a complete release of the portion of the judgment attributable to him.

Clearly, the settlement of the owners of the apartment here "is a complete release of

---

1. Act of June 16, 1985, ch. 959, § 1, 1985 Tex. Gen.Laws 3242, 3271, *amended by* June 16, 1987, ch. 2, § 2.11, 1987 Tex.Gen.Laws 37, 43, hereinafter referred to as § 33.015.

the portion of the judgment attributable to [them]" in accordance with § 33.015 and "the amount paid in settlement is irrelevant." *Cypress Creek Util. Service Co. v. Muller,* 640 S.W.2d 860, 864 (Tex.1982).

Therefore, the jury found no negligence on the part of the City of San Antonio, its agent CPS, and Fisher. The judgment must be affirmed as to the only other defendant below, the owners of the apartment, because no appeal has been taken as to them. *George,* 686 S.W.2d at 100. Furthermore, the owners of the apartment were completely released of any liability because of the settlement. § 33.015. Consequently, appellant's recovery thus amounts to zero damages, and any error in the liability submission is rendered harmless, (*Canales,* 763 S.W.2d at 23), unless, as alleged by the appellant, the evidence was "factually insufficient to support zero negligence findings [as to CPS and Fisher]."

Normally, in considering a "no evidence" or legal insufficiency point, we consider only the evidence favorable to the decision of the trier of fact and disregard all evidence and inferences to the contrary. *Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988). In considering a factual sufficiency point, we assess all the evidence and reverse for a new trial only if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex. 1986).

However, in *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686 (Tex.1989), the Texas Supreme Court established a standard of review for appellants "attacking the adverse finding to an issue upon which it had the burden of proof" and directed that "the court of appeals should [treat appellant's] point of error as if it were asserting that it had established [the issue attacked] as a matter of law." *Id.* at 690. The supreme court stated:

A party attempting to overcome an adverse fact finding as a matter of law must surmount two hurdles. First, the record must be examined for evidence that supports the jury's finding, while ignoring all evidence to the contrary. Second, if there is no evidence to support the fact finder's answer, then, the entire record must be examined to see if the contrary proposition is established as a matter of law.

*Id.*

■ Since the issue attacked by appellant is one where she had the burden of proof, we must treat the point of error as if appellant was asserting that the issue attacked had been established as a matter of law. Consequently, in accordance with the first hurdle established by the Texas Supreme Court, we have examined the evidence that supports the jury finding, while ignoring all evidence to the contrary, and find evidence to support the jury's answer which makes the second hurdle unnecessary.

The evidence supporting the jury finding shows that Fisher properly installed the gas regulator involved and furnished CPS with an instruction and parts manual for the item; that Fisher had no duty to service or check the regulator after the date of the sale to CPS; that there is a lack of industry standards or government regulations requiring any method of inspection or maintenance of such regulators; that there was no violation of any statute, regulation, or ordinance concerning the regulators; that CPS was fully equipped and adequately knowledgeable with regards to the maintenance and servicing of the regulator; that the tests on the regulator in question revealed no indications of a malfunction; and that there was no evidence that Fisher was ever contacted about this regulator by anyone.

In addition to the above evidence, the record reveals that the apartment owners were repeatedly notified of the gas problems in the complex; that the owners failed to respond to the complaints and failed to notify CPS about the complaints; that no complaints were made to CPS about the

gas problems by anyone; that the consumers were requested by mail to notify CPS if any gas problems were discovered and that the system would be checked; that a procedure was in operation wherein CPS would check any complaint and if a leak was discovered, the system would be shut down until it was repaired; and that according to experts on behalf of CPS, the regulator in question had been examined and was found to be working well.

Having determined that the record reveals sufficient evidence to support the jury finding of no negligence as to CPS and Fisher (*Sterner*, 767 S.W.2d at 690), the erroneous liability submission as to appellant is rendered harmless since the net recovery of the appellant under these circumstances is nevertheless zero damages. *Canales*, 763 S.W.2d at 23.

Appellant also contends that the jury's answer of zero to the damage issue is "not supported by factually sufficient evidence", and that the trial court erred in excluding appellant's evidence of pain and suffering. We find no compulsion to address these damage complaints because under these circumstances the failure of the jury to find damages is not error (*Whitehurst*, 652 S.W.2d at 449), and the question of damages thus becomes immaterial. *Turner*, 733 S.W.2d at 246.

■ The appellants further argue that the trial court erred in entering partial summary judgment which dismissed appellants' products liability/strict liability cause of action against the City of San Antonio and its agent, CPS. The appellants argue that "the product that the City of San Antonio was distributing and selling was natural gas." Moreover, they argue that the distribution system placed on the property of the consumer was part of the distribution process used by the City and its agent CPS to market the natural gas into the stream of commerce.

In their petition, appellants alleged that the injuries sustained by the deceased were caused by "dangerous[ly] high risk natural gas" which was made unreasonably dangerous by a defective distribution system including gas lines, gas meters and gas service pressure regulators used to supply the gas owned, furnished, leased, serviced and maintained by the City Public Service Board of the City of San Antonio. Moreover, appellants alleged that the defective gas service pressure regulators were provided by the CPS in the process of marketing the natural gas to the consumers without sufficient warnings or instructions for proper installation, periodic inspection, or periodic servicing of the instruments. No special exceptions were filed by appellees.

> When there are no special exceptions, a petition will be construed liberally in favor of the pleader. *Stone v. Lawyers Title Insurance Corp.*, 554 S.W.2d 183, 186 (Tex.1977). Also, "[t]he court will look to the pleader's intendment and the pleading will be upheld even if some element of a cause of action has not been specially alleged. Every fact will be supplied that can reasonably be inferred from what is specifically stated." *Gulf, Colorado & Santa Fe Railway Co. v. Bliss*, 368 S.W.2d 594, 599 (Tex.1963).

*Roark v. Allen*, 633 S.W.2d 804, 809–10 (Tex.1982).

The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985); *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972); TEX.R.CIV.P. 166a(c). In deciding whether a disputed material fact issue precludes summary judgment, the reviewing court will take as true all evidence favoring the nonmovant. *Nixon*, 690 S.W.2d at 549; *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984). Moreover, every reasonable inference from the evidence will be indulged in favor of the nonmovant, and any doubts will be resolved in his favor. *Nixon*, 690 S.W.2d at 549; *Montgomery*, 669 S.W.2d at 311.

■ In reviewing summary judgment evidence, it is well established that sworn

pleadings and denials to requests for admissions are not summary judgment evidence in Texas. *Americana Motel, Inc. v. Johnson*, 610 S.W.2d 143, 143 (Tex.1980). As such, a motion for summary judgment is a pleading and may not be considered as summary judgment evidence, *Kendall v. Whataburger, Inc.*, 759 S.W.2d 751, 754 (Tex.App.—Houston [1st Dist.] 1988, no writ), nor is a response to summary judgment competent summary judgment evidence. *Rhodes v. Interfirst Bank Fort Worth, N.A.*, 719 S.W.2d 263, 264 (Tex. App.—Fort Worth 1986, no writ). However, *affidavits*, depositions, interrogatories, and admissions are proper summary judgment evidence when referred to or incorporated in the motion for summary judgment, *Stewart v. U.S. Leasing Corp.*, 702 S.W.2d 288, 290 (Tex.App.—Houston [1st Dist.] 1985, no writ) (emphasis added), *citing, First Fed. Sav. & Loan Ass'n v. Bustamante*, 609 S.W.2d 845, 849 (Tex.Civ. App.—San Antonio 1980, no writ), but the trial court may not receive extrinsic evidence, either oral or documentary, at the hearing on the motion for summary judgment. *State v. Easley*, 404 S.W.2d 296, 297 (Tex.1966); *Citizens State Bank of Dickinson v. Shapiro*, 575 S.W.2d 375, 383 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r. e.). The issue before this court, therefore, is only whether, considering the law applicable to summary judgments, the appellees met their burden before the trial court.

In their Motion for Partial Summary Judgment, the City of San Antonio and CPS simply alleged that the appellants' product liability/strict liability cause of action did not apply to the City of San Antonio and CPS "as a matter of law," because "[t]he City did not introduce the regulator or similar products into the stream of commerce nor did it design, manufacture, or market the regulator or similar products."

Motions for summary judgment must "stand or fall on the grounds specifically set forth in the motion." *Ortiz v. Spann*, 671 S.W.2d 909, 914 (Tex.App.—Corpus Christi 1984, ref'd n.r.e.) (op. on reh'g).

The Texas Supreme Court has indicated the urgency of specificity in motions for summary judgments:

> It is axiomatic that one may not be granted judgment as a matter of law on a cause of action not addressed in a summary judgment proceeding. In *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979), we wrote, "The movant ... must establish his entitlement to a summary judgment on the issues *expressly presented* to the trial court by conclusively proving all essential elements of his cause of action or defense as a matter of law." (Emphasis added.)
>
> Because [appellee] moved for summary judgment on only one of [appellant's] four causes of action, the court of appeals' affirmation of this judgment was improper as to the other causes of action alleged by [appellant]. (Citations omitted.)

*Chessher v. Southwestern Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex.1983) (emphasis added in original).

> A summary judgment, unlike a judgment signed after a trial on the merits, is presumed to dispose of only those issues *expressly presented*, not all issues in the case. A summary judgment that fails to dispose *expressly* of all parties and issues in the pending suit is interlocutory and not appealable unless a severance of that phase of the case is ordered by the trial court; in the absence of an order of severance, the party against whom an interlocutory summary judgment has been rendered has his right of appeal when and not before such partial summary judgment is merged in a final judgment disposing of all parties and issues. *Teer v. Duddlesten*, 664 S.W.2d 702, 704 (Tex.1984)....

*City of Beaumont v. Guillory*, 751 S.W.2d 491, 492 (Tex.1988) (emphasis added).

It is clear that the target of appellees' motion for summary judgment was only the *gas regulator* since "similar products"

can hardly be considered specific enough to satisfy a motion for summary judgment considering where the burden lies. The city completely failed to address the issues of whether the natural gas was manufactured, marketed, or introduced into the stream of commerce and whether the distribution system made the natural gas "unreasonably dangerous" under the attending circumstances. Consequently, the city and CPS would be entitled to a partial summary judgment only as to what they "expressly presented" in their motion for summary judgment and no more, provided they complied with their burden.

Appellants' responses were "that the 'stream of commerce,' as applied to this case, includes not only the refinement and distribution of the natural gas itself, but also includes all the equipment and activities of the CITY PUBLIC SERVICE BOARD associated with its gas distribution. Appellant further responded that to distribute the gas, it was necessary to use a pressure regulator, which was located on or next to the building of its customer, the Chateau Orleans Apartment. The responses also contended "that the evidence of the element in this products liability action of the act of placing goods 'into the stream of commerce' is, in the very least, conflicting, and therefore, the issue of whether THE CITY'S gas distribution system and the equipment, including the pressure regulator, was placed 'in the stream of commerce' by THE CITY, is a fact question for the jury."

As the motion and response themselves are not evidence, the only evidence attached to the motion for summary judgment was the affidavit of Eugene L. Krause, an expert witness for appellee. The affidavit of Eugene L. Krause provides, in relevant part:

> City Public Service Board of San Antonio has not and did not design, manufacture, lease, sell, *market or otherwise place in the channels of commerce the gas regulator in question.* Further, the City Public Service Board of San Antonio does

not and has not designed, manufactured, *leased, sold, marketed or otherwise introduced into the channels of commerce gas regulators* similar to the one in question to be used by others as gas regulators. (Emphasis added.)

Attached to appellant's response to appellee's motion for partial summary judgment was the affidavits of Michael D. Pish, Robert Ross, and Mae Hancock, the appellant. The affidavit of Pish provides, in relevant part:

> Based upon my experience and training, and all of the information reviewed, and in reasonable engineering probability, it is my opinion that the explosion which occurred was a result of the uncontrolled release of natural gas, which was *sold to said apartments by the City Public Service Board and The City of San Antonio through its gas distribution system, including a gas pressure regulator installed on the premises of Chateau Orleans Apartments.* (Emphasis added.)

The affidavit of Ross provides, in relevant part:

> Based on this examination and reasonable engineering probability, I have concluded that the Fisher S201 regulator *was defectively designed and unreasonably dangerous to its user* in that it produced high pressure surges of natural gas in the apartment complex, which were a producing or contributing cause of the explosion. Further, I concluded that the Fisher S201 regulator was *defectively marketed in that neither Fisher, nor the City of San Antonio or CPS, provided adequate instructions or warnings for timely maintenance, inspection and replacement of the S201 regulator.* (Emphasis added.)

The affidavit of Mae Hancock provides, in relevant part:

> My mother, Ella Saenz, was a tenant at the Chateau Orleans Apartments, 3737 Fredericksburg Road, on December 31, 1984. She was killed in a massive explosion at her apartment on said date. *My*

*mother, Ella Saenz, deceased, was a user and consumer of the natural gas to heat her apartment and operate the appliances therein. The natural gas was sold by Defendants, The City, and CPS, and placed in its distribution lines in response to demand from consumers and customers, including Chateau Orleans Apartments.* Natural gas is a highly dangerous substance to the user, and it is a potential explosion hazard. I visited my mother regularly at Chateau Orleans before her death, and know that *no warning was ever given to her of the potential danger involved with the gas pressure regulator.* (Emphasis added.)

■ "In order to recover for an injury on the theory of strict liability in tort, the plaintiff bears the burden of proving that the defendant: (1) placed in the stream of commerce a product; (2) that such product was in a defective or unreasonably dangerous condition; and (3) that there was a causal connection between such condition and the plaintiff's injuries or damages." *Houston Lighting & Power Co. v. Reynolds,* 765 S.W.2d 784, 785 (Tex.1988), *citing, Armstrong Rubber Co. v. Urquidez,* 570 S.W.2d 374, 376 (Tex.1978). "[A] form of energy that can be made or produced by man, confined, controlled, transmitted and distributed to be used as an energy source for heat, power and light" is a product. *Reynolds,* 765 S.W.2d at 785. Such an energy product is placed into the stream of commerce only when it becomes usable by the consumer, and then "[s]trict product liability applies only if a product is expected to and does reach the user without substantial change in the condition." *Id.* Therefore, natural gas is a product which is usable by the consumer when placed in the distribution system, which reaches "the user without substantial change in the condition."

Although the attached affidavit to appellees' motion for summary judgment denies that the gas regulator was designed, manufactured, or marketed by the city, it does not address whether the natural gas itself was manufactured, or marketed by the city or whether the distribution system made the natural gas "unreasonably dangerous" under the attending circumstances. Further, the statement in the affidavit that the gas regulator was not placed into the stream of commerce is a legal conclusion. Because a summary judgment affidavit must set forth facts, not legal conclusions, appellee's summary judgment evidence fails to properly sustain their motion as to the stream of commerce issue. *Beta Supply, Inc. v. G.E.A. Power Cooling Sys., Inc.,* 748 S.W.2d 541, 542 (Tex.App.—Houston [1st Dist.] 1988, writ denied); *Harbour Heights Dev., Inc. v. Seaback,* 596 S.W.2d 296, 297 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ).

■ Appellants' responding affidavits, alleged that what caused the injuries involved was the natural gas that the city sold and marketed to the consumers which was made defective by its distribution system which included the gas regulator. The affidavits further alleged that the natural gas and its distribution system was a "potential explosive hazard" about which the city failed to properly warn or instruct the consumers. Since every reasonable inference will be indulged and every doubt resolved in favor of the nonmovant, we find that appellant raised fact issues regarding whether the natural gas was made defective or unreasonably dangerous by its distribution system, whether the natural gas was placed in the stream of commerce, and whether the natural gas was defectively marketed.

Considering that appellees failed to address appellants' products liability claim as to the natural gas itself or as to whether the natural gas was made unreasonably dangerous under the attending circumstances; that appellees failed to present proper summary judgment evidence without legal conclusions as to the stream of commerce issue; that the appellants raised valid issues of fact in their response; and that all inferences must be indulged and

every doubt resolved in favor of the appellants, we conclude that the appellees, as the movants below, failed in their burden before the trial court. The trial court erred in granting the partial summary judgment and, in effect, dismissing in its entirety all of appellants' products liability/strict liability cause of action.

Because appellant only complained of that part of the partial summary judgment involving the products liability/strict liability cause of action, only that part of the partial summary judgment is reversed and remanded.

The judgment on the merits is affirmed.

BUTTS, Justice, dissenting.

I disagree only with the last point in the majority opinion. It concerns the partial summary judgment.

Keeping in mind that the partial summary judgment was just that—partial, one needs only to read the motion for partial summary judgment to see that it covered three causes of action alleged against the City. These were: strict liability based on placing the allegedly *defective gas regulator* in the stream of commerce, violation of the deceptive trade practices act, and implied warranty. The last two were precluded by the statute of limitations. The motion as to the strict liability element was also granted and all three causes precluded. There were no special exceptions leveled against the motion regarding insufficiencies.

Most important in this case is that there was never any cause of action pled against the City based on its *placing gas as a natural product in the stream of commerce*. The allegations are built only on the City distributing gas through the allegedly defective gas regulator. The three affidavits filed in response to the motion for partial summary judgment do not function to create a new cause of action which was never pled. Responsive affidavits cannot establish a cause of action and become pleadings in a case. *See* TEX.R.CIV.P. 166a.

The trial court submitted the question of products liability to the jury: "Was the gas pressure regulator a defective product as that term defective product is defined in this Charge?" Answer: <u>NO</u>. At that point any cause of action based on the defective gas regulator had been decided against the plaintiffs.

An examination of the Third Amended Original Petition filed after the motion for partial summary judgment was granted reveals that plaintiffs did not plead this new cause of action against the City. The pleadings set out causes of action based only on the *defective gas regulator* (strict liability), negligence, and gross negligence. Plaintiffs did not attempt to amend their pleadings at trial to add a new cause of action. Nor did they request any jury instructions on this new cause of action. They do not argue on appeal that the cause of action was tried by consent minus any pleadings.

While it is established that a cause of action may arise when an entity such as the City places in the stream of commerce a product of high risk such as electricity or gas, *i.e., Houston Lighting & Power Co. v. Reynolds,* 765 S.W.2d 784 (Tex.1988), there never was alleged in the present case this particular cause of action, and the City was never put on notice to defend this cause of action. This court cannot create one from the responsive affidavits. It is not for the appellate court to give life to a cause of action which might have been pled, but was not. The appellate court does not have that authority. Plaintiffs either plead a cause of action, or they do not. These plaintiffs did not plead this cause of action.

Therefore, I respectfully dissent to the portion of the majority opinion regarding the partial summary judgment.