Opinion issued May 19, 2005



     













In The
Court of Appeals
For The
First District of Texas




NO. 01-01-00748-CV




CHRISTINE HOUSE, Appellant

V.

ETHYL CORPORATION, Appellee




On Appeal from the 80th District Court
Harris County, Texas
Trial Court Cause No. 98-27920




MEMORANDUM OPINION
          Appellant, Christine House, alleged that appellee, Ethyl Corporation (Ethyl), 
caused her injuries from chemical exposure by negligently failing to provide a safe
workplace and by providing defective equipment. A jury found both parties
negligent, allocated 70% of the negligence to House and 30% of the negligence to
Ethyl. Accordingly, the trial court’s judgment ordered that House take nothing from
her suit. In two issues, both of which were presented to the trial court in House’s
motion for new trial, which the trial court denied, House contends that (1) the jury’s
allocation of negligence is against the great weight and preponderance of the
evidence, and (2) she is entitled to a new trial because affidavits submitted by six of
the jurors state that inappropriate jury conduct occurred during the jury’s
deliberations. We affirm.BackgroundIn September 1991, House was employed by Jones-Frazier, Inc. (Jones-Frazier), a company that provided industrial cleanup services to petrochemical plants. 
Ethyl contracted Jones-Frazier to provide industrial cleanup services at Ethyl’s
chemical plant. House was assigned to work on a late night cleanup operation of
Ethyl’s “coke” unit. Ethyl provided House with a fire suit, helmet, a “half” face
mask, respirator, and specialized clothing referred to as “No-Vacs.” Duct tape was
used to make the fire suit and helmet fit House. When she finished her cleanup
assignment, she noticed that her voice sounded distorted, she felt tired, had a sore
throat, and coughed up blood. The next day, House went to the Pasadena General
Hospital. House was diagnosed with chemical bronchitis, given medication, and
given permission to return to work with the following restrictions: “No exposure to
chemicals. No lifting. Limited walking. Office work.” 
          Because she was afraid that she might be fired if she did not return to work and
she felt “fine,” House returned to work cleaning up chemicals, in contravention of the
doctor’s orders, and was again assigned to perform work at Ethyl’s plant. Ethyl’s
foreman, “Mr. Bush,” instructed House and her co-workers, Leroy Garcia, and a
person known only as “Bo,” how to remove a hard, white-gray material from the
bottom of a large chemical storage tank, referred to as vessel 9490. Mr. Bush
informed the workers that they could not use the air supply safety equipment provided
by Jones-Frazier, but would instead be provided with and would use Ethyl’s
equipment. House was provided with a full face respirator mask that supplied a
constant flow of air through a hose that was taped to the back of her body to prevent
the hose from interfering with her while she worked. House was also provided with
gloves, a “slicker” suit, and specialized coveralls known as a “ty-vac.” House
believed that the safety equipment did not fit property, and she was not assisted with
the equipment by any Ethyl employees. House was told that the vessel she was
assigned to clean had been “fume-tested” earlier that morning and was safe to enter,
but she was not informed that it had contained toluene.
          House entered the vessel, but when she reached the bottom of the vessel, she
had a metal taste in her mouth, trouble breathing, and passed out. When House
awoke, she was outside of the vessel on a nearby platform. Two Jones-Frazier
coworkers took her to the Jones-Frazier office. House then went back to the
Pasadena General Hospital, where she received more medication. Subsequently,
House suffered from bleeding out of her ears and nose, memory problems, difficulty
eating, difficulty maintaining her balance, general feelings of pain, hair loss, and
problems with her bowels and eyes. 
          House continued to work in the field of hazardous waste cleanup after her
alleged exposures in September 1991. House did not report her injuries to Ethyl, and
she did not seek medical treatment again until August, 1994, when she went to Dr.
Arch Carson. Dr. Carson diagnosed House with chemical encephalopathy, a brain
injury due to chemical exposure, as well as syncope, cerebral dysfunction, and vertigo
due to toluene exposure. 
          House sued Ethyl for negligence in 1998, and a jury trial ensued in 2001. 
Ethyl’s defenses at trial focused on the lack of eyewitnesses to the alleged injury and
claimed that no corroborating medical or other scientific evidence of the alleged
injury, no evidence of the safety violations that House asserted, and no credible
explanation of why House’s claimed injuries were not reported until years after they
allegedly occurred. 
          Following the take-nothing judgment, House filed a motion for new trial in
which she asserted that the evidence was factually insufficient to show that she was
primarily negligent and that jury misconduct had occurred. Affidavits from six of the
twelve jurors stated that the jury charge was confusing, explained what the jury
discussed during its deliberations, and also stated that the jurors believed that House
would receive some monetary compensation from Ethyl, even though House was over
50 percent negligent in causing her injuries. Ethyl responded to the motion for new
trial by asserting that the evidence was factually sufficient and that the juror affidavits
(1) had to be quashed pursuant to the Rules of Evidence and Rules of Civil
Procedure, and (2) were not evidence of juror misconduct based on any outside
influence. The trial court denied the motion for new trial. Factual Sufficiency
          In her first issue, House contends that the jury verdict in favor of Ethyl, which
allocated 70% of the negligence to her and 30% of the negligence to Ethyl, is against
the great weight and preponderance of the evidence.
          A party who challenges a jury finding on an issue on which she had the burden
of proof, must demonstrate on appeal that the adverse finding is against the great
weight and preponderance of the evidence. See Dow Chem. Co. v. Francis, 46
S.W.3d 237, 242 (Tex. 2001). We must consider and weigh all of the evidence and
can set aside a verdict only if the evidence is so weak or if the finding is so against
the great weight and preponderance of the evidence that it is clearly wrong and
unjust. Id. In doing so, we must “detail the evidence relevant to the issue” and “state
in what regard the contrary evidence greatly outweighs the evidence in support of the
verdict.” Id., citing Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986). It is
the jury’s province to reconcile conflicting or contradictory evidence of the witnesses. 
Herbert v. Herbert, 754 S.W.2d 141, 144 (Tex. 1988). The jury is the sole judge of
the credibility of the witnesses and the weight to give their testimony. Transmission
Exch. Inc. v. Long, 821 S.W.2d 265, 271 (Tex. App.—Houston [1st Dist.] 1991, writ
denied). We may not substitute our opinion for that of the trier of fact and determine
that we would reach a different result. Id.
          House contends that the evidence is factually insufficient to support the jury’s
apportionment of negligence because (1) she was never told about safety reporting
procedures and never attended a safety orientation, (2) she had never used Ethyl’s
forced air system before, (3) no one from Ethyl demonstrated how to use the forced
air system properly or assisted her in “fit-testing” the face mask of Ethyl’s forced air
system, (4) no one from Ethyl was present to supervise the clean-up operation of
vessel 9490, (5) Mr. Bush would not let House use Jones-Frazier’s safety equipment, 
(6) Ethyl violated many of its own safety rules, (7) House was never informed of the
contents of vessel 9490, (8) Mr. Bush did not provide her with written results of the
fume test that had been performed on vessel 9490 earlier that morning, and (9) no one
from Ethyl offered House medical assistance.
          However, for each point House asserts, contradictory evidence was presented. 
Concerning Houses’s first six assertions, the record contains conflicting evidence on
the issue of the safety procedures and equipment. The record shows that House was
not trained in the use of the equipment, had no experience with the equipment, and
that none of Ethyl’s employees assisted House with the installation of the equipment
or with instructions on how to use it. The record also shows, however, that House
had ten years’ experience as a hazardous waste removal worker and that she had
previously worn and was familiar with safety equipment. House earned many safety
certifications to work at various chemical plants, including a certification from the
Houston Area Contractors’ Safety Counsel.
          The record also includes evidence that all of Ethyl’s safety rules were followed. 
Ethyl’s company policy required that contractors, rather than Ethyl, “fit-test” their
employees. An Ethyl foreman testified that there would be no reason for any
employee to ever wear ill-fitting equipment because Ethyl provided equipment
suitable to fit any size person. An Ethyl foreman further disputed that House was
required to wear safety equipment that she was not trained to use and stated his belief
that all contractors would have had experience using a forced air system such as
Ethyl’s.
          House’s sixth and seventh contentions, that she was insufficiently notified of
the contents of the vessel, are also disputed in the record. Evidence was presented
that the results of the fume test were available to House and that she could have
witnessed the fume testing. Furthermore, Ethyl showed that “haz-com” procedures
were properly followed. These allowed all contractors’ employees access to
information on any chemicals that had been stored in the vessel. 
          In her seventh assertion, House states that she was not offered medical
assistance from Ethyl. Yet, the record shows that, although House had viewed
Ethyl’s mandatory safety video informing workers to report all injuries and illnesses
to Ethyl, House did not report her injuries immediately. Moreover, she never went
to the onsite medical facilities at the Ethyl plant, even though she knew that one was
available. Likewise, House decided to work on vessel 9490 despite work restrictions
from the hospital doctor instructing her to refrain from that type of work. 
          Ethyl also vigorously disputed whether an exposure to House had even
occurred by presenting evidence that there was no “coke” unit at Ethyl in September
1991, nor any type of “coking” procedures. Additionally, although House testified
that she was exposed to toluene in September 1991 while working on vessel 9490,
according to Ethyl, the work at that vessel had been completed by August 1991. 
House delayed her reporting of the alleged injury and continued to work as a
hazardous waste cleaner even after the alleged exposures that are the basis of her
lawsuit. Ethyl also presented expert testimony showing that House’s symptoms were
inconsistent with the quantity of toluene to which she could have been exposed. 
          Having considered all of the evidence presented, we hold that the jury’s
apportioning 70% of the negligence to House and 30% of the negligence to Ethyl is
not so against the great weight and preponderance of the evidence as to be clearly
wrong or unjust, see Dow Chem. Co., 46 S.W.3d at 242, and therefore hold that the
evidence is factually sufficient to support the judgment.
          We overrule House’s first issue.
Jury Misconduct
          In her second issue, House contends that the trial court erred by not granting
her motion for new trial, in which she alleged jury misconduct and to which she
attached the affidavits of six of the 12 jurors, who stated that they intended to award
House $3,000,000. House further contends that one of the jurors, who had paralegal
training, exerted an outside influence by providing erroneous information to the jury
concerning the apportionment of negligence, which confused the jurors and caused
them to believe, falsely, that House would receive 30% of the amount of damages that
House’s counsel argued for at trial.



          Rule of Civil Procedure 327(b) and Rule of Evidence 606(b) both state that
jurors may not testify about statements or matters occurring during deliberations, but
that they may testify about “outside influences.”


 See Tex. R. Civ. P. 327(b); Tex. R.
Evid; 606(b); Golden Eagle Archery, Inc. v. Jackson, 24 S.W.3d 362, 369 (Tex.
2000). 
          House argues that, by providing erroneous information concerning the
apportionment of negligence, the paralegal juror exerted an “outside influence,” thus
bringing the juror’s statements within the exception allowed under rules 327(b) and
606(b). “Outside influence,” however, must not only arise from information and
expertise not in evidence but must also emanate from outside the jury and its
deliberations. See Kendall v. Whataburger, Inc., 759 S.W.2d 751, 755 (Tex.
App.—Houston [1st Dist.] 1988, no writ); see also Golden Eagle, 24 S.W.3d at 370
(stating “The rules contemplate that an ‘outside influence’ originates from sources
other than the jurors themselves.”). Thus, comments or statements made by a juror
to the other jurors during the course of their deliberations are internal to the jury’s
deliberations and do not amount to the requisite “outside influence.” See Golden
Eagle, 24 S.W.3d at 370; Kendall, 759 S.W.2d at 756.
          The accounts the jurors referred to in the six post-trial juror affidavits here
concern general juror confusion as to the jury charge and personal observations and
discussions by the jurors while deliberating. These accounts are internal to the jury’s
deliberations and do not amount to the requisite “outside influence.” See id.
          Having failed to allege and prove the existence of an actual “outside
influence,” as required by rules 327(b) and 606(b), House’s second point of error is
overruled. See Kendall, 759 S.W.2d at 756.
 
 
 
Conclusion
          We affirm the judgment of the trial court.
 
 
                                                             Elsa Alcala
                                                             Justice


Panel consists of Justices Taft, Alcala, and Higley.