**Robert GILCHRIST, Appellant,**

v.

**BANDERA ELECTRIC COOPERATIVE, INC., Appellee.**

No. 04–94–00547–CV.

Court of Appeals of Texas, San Antonio.

March 20, 1996.

Rehearing Overruled May 16, 1996.

Earle Cobb, Jr., San Antonio, for Appellant.

James A. Rindfuss, San Antonio, for Appellee.

Before CHAPA, C.J., and RICKHOFF, LÓPEZ, STONE, HARDBERGER, GREEN and DUNCAN[1], JJ.

CHAPA, Chief Justice.

Appellant Gilchrist appeals a summary judgment granted in favor of appellee, Bandera Electric Cooperative, Inc., on a contract claim. Under long-standing precedent, the dispositive issue is whether the summary judgment, which purports to be a final appealable order, properly disposed of all issues and parties. TEX.R.APP.P. 90(a).

The record reflects a claim made by appellee against appellant based on a rental contract, and counterclaims by appellant for breach of contract, deceptive and unfair trade practices, antitrust violations, and coercion. Appellee's motion for summary judgment stated that it "embraces [appellee's] entire claim against [appellant]." The motion for summary judgment, however, fails to mention appellant's counterclaims at all.

The standards for reviewing summary judgment are well settled. They are as follows:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Goswami v. Metropolitan Sav. & Loan Ass'n,* 751 S.W.2d 487, 491 (Tex.1988).

The defendant's burden of proof in a summary judgment is to show as a matter of law that the plaintiff has no cause of action against him. *Citizens First Nat'l Bank v. Cinco Exploration Co.,* 540 S.W.2d 292, 294 (Tex.1976); *Gaddis v. Smith,* 417 S.W.2d 577, 582 (Tex.1967). "The trial court may not grant a summary judgment by default for lack of an answer or response to the motion by the non-movant when the movant's summary judgment proof is legally insufficient." *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). Motions for summary judgment "stand or fall on the grounds *specifically* set forth in the motion(s)." *Ortiz v. Spann,* 671 S.W.2d 909, 914 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.) (op. on reh'g) (emphasis added). The Texas Supreme Court has indicated the urgency of specificity in motions for summary judgments:

It is axiomatic that one may not be granted judgment as a matter of law on a cause of action not addressed in a summary judgment proceeding. In *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979), we wrote, "The movant ... must establish his entitlement to a summary judgment on the issues *expressly presented* to the trial court by conclusively proving all essential elements of his cause of action or defense as a matter of law."

*Chessher v. Southwestern Bell Tel. Co.,* 658 S.W.2d 563, 564 (Tex.1983) (emphasis added).

---

1. A majority of the justices of this court called for en banc review pursuant to Rule 100(f), TEX R.APP P.

In *City of Beaumont v. Guillory,* 751 S.W.2d 491 (Tex.1988), the supreme court held:

A summary judgment, unlike a judgment signed after a trial on the merits, is presumed to dispose of only those issues *expressly presented,* not all issues in the case. A summary judgment that fails to dispose *expressly* of all parties and issues in the pending suit is interlocutory and not appealable unless a severance of that phase of the case is ordered by the trial court; in the absence of an order of severance, the party against whom an interlocutory summary judgment has been rendered has his right of appeal when and not before such partial summary judgment is merged in a final judgment disposing of all parties and issues.

*Id.* at 492 (emphasis added); *see also, Martinez v. Humble Sand & Gravel, Inc.,* 875 S.W.2d 311, 312 (Tex.1994) (citing *Mafrige v. Ross,* 866 S.W.2d 590, 591 (Tex.1993)); *Houston Health Clubs, Inc. v. First Court of Appeals,* 722 S.W.2d 692, 693 (Tex.1986). "In the absence of a special statute making an interlocutory order appealable, a judgment must dispose of all issues and parties in the case, including those presented by *counterclaims or cross action,* to be final and appealable." *New York Underwriters Ins. Co. v. Sanchez,* 799 S.W.2d 677, 678 (Tex. 1990) (emphasis added).

■ In *Mafrige v. Ross,* 866 S.W.2d 590 (Tex.1993), the court stated that "[i]f a summary judgment order appears to be final, as evidenced by the inclusion of language purporting to dispose of all claims or parties, the judgment should be treated as final for purposes of appeal [but] [i]f the judgment grants more relief than requested, it should be reversed and remanded, but not dismissed." *Id.* at 592.

In *Rodriguez v. Gill,* 849 S.W.2d 442 (Tex. App.—San Antonio 1993, no writ), this court stated:

Where a summary judgment order is appealed which is clearly interlocutory on its face, in the absence of an order of severance, the appellate courts should dismiss because the order is nonappealable. *Pan American Petroleum Corp. v. Texas Pacific Coal & Oil Co.,* 159 Tex. 550, 324

S.W.2d 200, 200 (1959); *see also City of Beaumont,* 751 S.W.2d at 492; *Teer v. Duddlesten,* 664 S.W.2d 702, 704 (Tex. 1984). However, where a summary judgment order is appealed which appears to be final on its face, but which should have been partial and interlocutory, in the absence of an order of severance, the appellate courts should reverse the judgment and remand to the trial court for disposal of all remaining parties and issues in a final appealable order. *Teer,* 664 S.W.2d at 705. But it should be further noted that where the summary judgment appealed appears to be final on its face but should have been partial and interlocutory, the merits of the appeal are not reached because the proper order which should have been entered is not appealable until "when and not before the same is merged in a final judgment disposing of the whole case." *Pan American Petroleum Corp.,* 324 S.W.2d at 201; *see also Teer,* 664 S.W.2d at 704.

The judgment is reversed, and the cause remanded to the trial court for disposal of all issues and parties by a proper final and appealable order, or a proper severance order which will make any partial summary judgment final and appealable.

*Rodriguez,* 849 S.W.2d at 444; *see also Qualia v. Qualia,* 878 S.W.2d 339, 340–41 (Tex. App.—San Antonio 1994, writ denied); *Uribe v. Houston General Ins. Co.,* 849 S.W.2d 447, 451 (Tex.App.—San Antonio 1993, no writ); *Haun v. Steigleder,* 830 S.W.2d 833, 834 (Tex.App.—San Antonio 1992, no writ); *410/ West Ave. Ltd. v. Texas Trust Sav.,* 810 S.W.2d 422, 426 (Tex.App.—San Antonio 1991, no writ); *Hancock v. City of San Antonio,* 800 S.W.2d 881, 890–91 (Tex.App.—San Antonio 1990, writ denied).

■ Here, the motion for summary judgment failed to address any of the counterclaims, and therefore, the trial court could not have granted judgment as a matter of law on the counterclaims. *Chase Manhattan Bank v. Lindsay,* 787 S.W.2d 51, 53 (Tex. 1990); *Baker v. Hansen,* 679 S.W.2d 480, 481 (Tex.1984); *Chessher,* 658 S.W.2d at 564; *Clear Creek Basin Auth.,* 589 S.W.2d at 678; *PHB, Inc. v. Goldsmith,* 539 S.W.2d 60 (Tex.

1976); *Ortiz*, 671 S.W.2d at 914. Further, the counterclaims were not severed, which was necessary to render the judgment on the claims expressly addressed in the motion for summary judgment final and appealable. *Guillory*, 751 S.W.2d at 492; *Chessher*, 658 S.W.2d at 564. In the event that the counterclaims are not severable, the summary judgment remains interlocutory until the counterclaims are adjudicated. *Chase Manhattan Bank*, 787 S.W.2d at 53. Consequently, the trial court should have granted only a partial summary judgment on the claims expressly addressed in the motion. *See New York Underwriters*, 799 S.W.2d at 678; *Guillory*, 751 S.W.2d at 491; *Chessher*, 658 S.W.2d at 564; *Ortiz*, 671 S.W.2d at 914.

■ However, the judgment granted by the trial court purports to dispose of all parties and issues, which invokes the jurisdiction of this court to a limited extent. *Mafrige*, 866 S.W.2d at 592. Since the judgment "grants more relief than requested, it should be reversed and remanded." *Id.* The trial court can then dispose "of all issues and parties by a proper final and appealable order, or a proper severance order which will make any partial summary judgment final and appealable." *Rodriguez*, 849 S.W.2d at 444.

Although the dissent concedes the counterclaims were not properly disposed of by this summary judgment, it would erroneously affirm what amounts to an interlocutory partial summary judgment, and sever and reverse the counterclaims without regard to whether they may or may not be severable[2]. We recognize that the dissent follows some authority in their interpretation of *Mafrige*;

however, such a holding is erroneous for several reasons.

First, the dissent misinterprets and expands *Mafrige* without considering the consequences of such a holding. If *Mafrige* intended to change the appellate procedures of summary judgments as drastically as proposed by the dissent, the Supreme Court would have specifically overruled all of the long-standing precedent which holds otherwise. *See Martinez*, 875 S.W.2d at 311; *New York Underwriters*, 799 S.W.2d at 678; *Chase Manhattan Bank*, 787 S.W.2d at 51; *Guillory*, 751 S.W.2d at 492; *Baker*, 679 S.W.2d at 480; *Chessher*, 658 S.W.2d at 564; *Qualia*, 878 S.W.2d at 339; *Rodriguez*, 849 S.W.2d at 444; *Uribe*, 849 S.W.2d at 451; *Haun*, 830 S.W.2d at 833; *410/West Ave. Ltd.*, 810 S.W.2d at 422; *Hancock*, 800 S.W.2d at 881; *Ortiz*, 671 S.W.2d at 914. Moreover, if *Mafrige* intended to authorize the courts of appeal to deal for the first time with the merits of what is actually an unsevered interlocutory partial summary judgment, the Supreme Court would have clearly expressed such intent.

*Mafrige*, however, neither authorizes the court of appeals to deal with the merits of an unsevered interlocutory partial summary judgment, nor overrules any existing authority to the contrary. *Mafrige* merely states that "[i]f a summary judgment order appears to be final, as evidenced by the inclusion of language purporting to dispose of all claims or parties, the judgment should be treated as final for purposes of appeal [but] [i]f the judgment grants more relief than requested, it should be reversed and remanded, but not dismissed." *Id.* at 592. The dissent improperly utilizes the misreading of *Mafrige* as

---

2. The dissent attempts to suggest nonexistent inconsistencies between *Stroud v. VBFSB Holding Corp.*, 901 S.W.2d 657, 661 (Tex.App.—San Antonio 1995), *superseded on rehearing by,* 917 S.W.2d 75 (Tex.App.—San Antonio, 1996, n.w.h.), *Rosales v. H.E. Butt Groc. Co.*, 905 S.W.2d 745 (Tex.App.—San Antonio 1995, writ denied), and the majority opinion in this case.

In *Stroud*, this court held that where the finality of a summary judgment depended entirely on an improper severance, it was an unappealable interlocutory summary judgment which should be dismissed for lack of jurisdiction. Upon rehearing, the court determined the summary judg-

ment final and appealable after taking notice of a judgment dismissing the improperly severed issues. The court then disposed of the summary judgment on its merits.

*Rosales* involved the granting of an improper change of venue and a subsequent summary judgment purporting to dispose of all issues and parties. Following *Mafrige*, this court assumed jurisdiction, concluded that the initial motion for a change venue was improperly granted, and reversed without reaching the issue of the summary judgment.

We are unable to detect any inconsistencies between these holdings and the present majority opinion.

authority to impliedly overrule Texas Supreme Court precedent. *See, e.g., Martinez,* 875 S.W.2d at 311; *New York Underwriters,* 799 S.W.2d at 678; *Chase Manhattan Bank,* 787 S.W.2d at 51; *Guillory,* 751 S.W.2d at 492; *Baker,* 679 S.W.2d at 480; *Chessher,* 658 S.W.2d at 564.

Second, without a point of error, a motion to sever, or even an oral request before this court, the dissent would *sua sponte* sever the counterclaims in order to deal properly with the merits of what is, in fact, an interlocutory partial summary judgment. We can find no authority for such a holding. Furthermore, by *sua sponte* severing the counterclaims, the dissent would also improperly assume the normal duties of a trial court. Such a holding would require this court to not only assign new cause numbers to the severed counterclaims,[3] but to *sua sponte* consider and evaluate the limitations imposed by law on the granting of such a severance. *See, e.g.,* TEX.R.CIV.P. 97 (requiring that compulsory counterclaims be raised during initial trial involving same transaction or occurrence); *Barr v. Resolution Trust Corp,* 837 S.W.2d 627, 630–31 (Tex.1992) (requiring all claims in transaction or series of transactions be brought at one time to one final judgment or suffer potential of having claim extinguished under policy of res judicata); *Coalition of Cities for Affordable Util. Rates v. Public Util. Comm'n,* 798 S.W.2d 560, 564 (Tex.1990) (discussing improper severance), *cert. denied sub nom., Gulf States Util. Co. v. Coalition of Cities for Affordable Util. Rates,* 499 U.S. 983, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991); *Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.,* 793 S.W.2d 652, 658 (Tex.1990) (limiting claims that may be properly severed); *Wyatt v. Shaw Plumbing Co.,* 760 S.W.2d 245, 247 (Tex.1988) (defining compulsory counterclaims); *Kansas Univ. Endowment Ass'n v. King,* 162 Tex. 599, 350 S.W.2d 11, 19 (1961) (stating severance proper only where suit involves two or more separate and distinct causes of action and will be reversed if severance fragments the case instead of splitting it along proper line of cleavage); *Mathis v. De La Garza & Assocs.,* 778 S.W.2d 105, 106 (Tex.App.—Texarkana 1989, no writ) (finding abuse of discretion where compulsory counterclaims were severed); *Ryland Group, Inc. v. White,* 723 S.W.2d 160, 162 (Tex.App.—Houston [1st Dist.] 1986, no writ) (determining abuse of discretion to sever personal injury and property claims arising from single wrong act); *Bohart v. First Nat'l Bank,* 536 S.W.2d 234, 236 (Tex.App.—Eastland 1976, writ ref'd n.r.e.) (stating compulsory counterclaims or cross-claims between defendants arising out of and turning on same facts should not be severed); *see also* McDonald, *Texas Civil Practice* § 17.25 (1992).

The interpretation of *Mafrige* proposed by the dissent would create additional and unnecessary complications at the trial court level. For example, complications and confusion would ensue in the trial court upon remand if the severed counterclaims were mandatory and not severable in the first place. The dissent justifies the severance by the authority of TEX.R.APP.P. 81(c), which provides:

> When the judgment or decree of the court below shall be reversed, the court shall proceed to render such judgment or decree as the court below should have rendered, except when it is necessary to remand to the court below for further proceedings.

However, we remind the dissent that "the judgment or decree the court below should have rendered" here was a partial interlocutory summary judgment, which is not final or appealable. *See Martinez,* 875 S.W.2d at 311; *Guillory,* 751 S.W.2d at 492; *Chessher,* 658 S.W.2d at 564.

---

3. The assignation of new cause numbers would be mandatory as the law is clear that there can be only one final and appealable judgment in a single cause of action. TEX.R.CIV.P. 301; *see also Wang v. Hsu,* 899 S.W.2d 409, 411 (Tex.App.—Houston [14th Dist.] 1995, writ denied); *Ferguson v. Naylor,* 860 S.W.2d 123, 127 (Tex.App.—Amarillo 1993, writ denied); *State v. $2,000,000,* 822 S.W.2d 721, 725 (Tex.App.—Houston [1st Dist.] 1991, no writ). Therefore, if the courts of appeal are to address the merits of what amounts to a partial summary judgment and remand the unaddressed issues and parties to the trial court for further proceedings, severance must necessarily take place.

Third, authorizing the affirmance of interlocutory partial summary judgments as suggested by the dissent would not only revolutionize appellate summary judgment procedures, but also encourage the piecemeal disposition of lawsuits. The mere preparation of a summary judgment order purporting to dispose of all issues and parties, where all issues and parties were not actually addressed in the motion for summary judgment, would automatically provide a party with a severance at will without the inconvenience of dealing with the laws of interlocutory partial summary judgments, severance, compulsory counterclaims, or the transactional approach to claims. Moreover, such a situation would give rise to the specter of innumerable final judgments stemming from a single lawsuit. Accordingly, the possibility of numerous appealed interlocutory partial summary judgments stemming from one case would become very real. This practice would create enormous judicial confusion in the interpretation of the maze of final judgments stemming from one occurrence or transaction. In short, the purpose behind the laws of interlocutory partial summary judgments, severance, compulsory counterclaims, and the transactional approach to claims would be frustrated and judicial economy would receive a devastating blow.

Recognizing that the Supreme Court failed to overrule all previous holdings to the contrary in *Mafrige*, the dissent justifies it revolutionary interpretation of *Mafrige* by insisting that the previous holdings were overruled by the Supreme Court *sub silencio*. However, in *Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508 (Tex.1995), the supreme court recently cited *Mafrige* as authority for restating the law existing prior to *Mafrige* regarding the finality and appealability of summary judgments:

> The defendants argue that the appellate timetable ran from the issuance of the summary judgment rather than from the signing of the severance order. *See* TEX. R.APP.P. 41(a). We disagree. All parties and all issues before the trial court must be disposed of before a summary judgment becomes final and appealable. *See Mafrige v. Ross*, 866 S.W.2d 590, 591 (Tex.

> 1993). The summary judgment in this case did not dispose of the claims against Walkes and Badlissi, and it contained no "Mother Hubbard" clause. Thus, it was not a final, appealable order. *See id.* at 590–91. Although the plaintiffs had filed notice to nonsuit Walkes, the appellate timetable could not be triggered until a signed, written order of the court dismissed him. *See Farmer v. Ben. E. Keith Co.*, 907 S.W.2d 495 (Tex.1995). Until the trial court rendered its severance order, the summary judgment for the hospital, Dr. Zuzukin, and nurse Jones did not become final and appealable. *See Mafrige*, 866 S.W.2d at 591. Accordingly, the plaintiffs timely perfected their appeal.

*Id.* at 510. This gives rise to yet another undesirable consequence of applying the holding of the dissent. Under the holding of the dissent, an unnecessary confusion would be created regarding the proper application of the appellate timetables which would appear to conflict with the language of the supreme court in *Park Place Hospital. Id.; see also Martinez*, 875 S.W.2d at 313–14 (discussing application of appellate timetables in situations involving interlocutory summary judgments).

The dissent attempts to distinguish *Park Place Hospital* by pointing out the existence of a "Mother Hubbard" clause in the present case. The dissent suggests that the inclusion of a "Mother Hubbard" clause in a summary judgment amounts to an all-encompassing procedural safeguard, operating to make any summary judgment final and appealable as to all parties and causes of action, notwithstanding the fact that such relief was not requested. However, subsequent to *Mafrige*, the Supreme Court determined that in spite of a "Mother Hubbard" clause, the order at issue was interlocutory not only as to the defendants who were not included in the original motion for summary judgment, but as to the original movants as well. *Martinez*, 875 S.W.2d at 313–14. As such, the court determined that the appellate court "should not have taken jurisdiction of the appeal". *Id.* at 312. Although the facts of *Martinez* are not identical to those in the present case, the results are instructive. As demonstrated by

*Martinez,* a "Mother Hubbard" clause does not always in and of itself create a final and appealable summary judgment.

Apparently confused by the holding of the majority, the dissent laments that as a result of the majority opinion, appellees will somehow be deprived of the partial summary judgment which should have been granted by the trial judge. We remind the dissent that the majority opinion clearly points out to the trial court that a partial summary judgment is the judgment which should have been entered, that such a judgment is not final or appealable, and that it can be made final and appealable by proper severance or the disposal of all remaining issues and parties. There is no reason why a simple reading of this opinion by the trial court would necessarily result in a deprivation of the partial summary judgment which should have been rendered in the first place. The trial court retains jurisdiction to enter a final and appealable judgment which may, if proper, include the same partial summary judgment and a severance or the same partial summary judgment and a final judgment disposing of all remaining issues and parties.

The judgment is reversed and remanded to the trial court to dispose of all the issues and parties in a proper final and appealable judgment. *Mafrige,* 866 S.W.2d at 590.

DUNCAN, Justice, concurring and dissenting, joined by RICKHOFF and GREEN, Justices.

The majority's judgment reversing and remanding this entire case conflicts with the supreme court's opinion in *Mafrige,*[1] both as written by Justice Cornyn and as interpreted by virtually every other court of appeals confronting the issue. That the majority disagrees with *Mafrige* is clear. But, in the absence of any material distinguishing fact, that disagreement is immaterial. Our duty is then to follow the law as enunciated by the courts above. Because the majority fails to follow its clear duty in this case, we dissent from the majority's judgment insofar as it reverses the summary judgment on Bandera's claims.

1. *Mafrige v. Ross,* 866 S.W.2d 590 (Tex.1993).

## FACTS

On July 11, 1990, Gilchrist and Bandera entered into a written contract by which Gilchrist was permitted to attach his cable TV lines to Bandera's electrical poles. The contract provided that it remained "in effect until terminated by either party hereto at the end of one (1) year from the date hereof or thereafter upon the giving of written notice to the other party not less than six (6) months prior to the date of termination." On June 11, 1992, Bandera sent notice to Gilchrist that it was terminating their agreement "upon the expiration of the notice period provided therein on December 11, 1992."

In late 1993, Bandera sued Gilchrist, claiming that he had breached the June 11, 1992 agreement and requesting a mandatory injunction requiring that Gilchrist remove his cable TV lines from Bandera's poles, damages for unpaid rentals in the amount of $4,717.50, and attorney's fees. In his Third Amended Original Answer, Gilchrist alleged several affirmative defenses, as well as counterclaims for breach of contract, deceptive and unfair trade practices, antitrust violations, and coercion.

On June 2, 1994, Bandera moved for summary judgment on "its entire claim against Defendant." A hearing on Bandera's motion was scheduled for June 24, 1994. On June 20, Gilchrist filed his affidavit, which alleged that various fact issues precluded summary judgment (including fact issues regarding his counterclaims). On June 21, Gilchrist filed a motion requesting leave to file a response, a response, and a motion seeking a continuance. The record before us does not contain an order on the motion for leave or the motion for continuance. On June 24, the trial judge heard and granted Bandera's motion and rendered judgment in Bandera's favor for the unpaid rentals and attorney's fees. The order contained a Mother Hubbard clause denying all other relief. Thereafter, the trial court denied Gilchrist's motion for new trial, which again raised the counterclaim issue, among others.

On appeal, Gilchrist has filed a four-page brief, exclusive of the table of contents and certificate of service, raising two points of error. First, Gilchrist brings forward a broad *Malooly*[2] point of error. Second, Gilchrist argues that the trial court erred in denying his motion for new trial. Gilchrist's brief to this court twice mentions his counterclaims. In his Preliminary Statement, Gilchrist states:

> Gilchrist appeals claiming that *there are fact issues* whether Bandera Co–Op breached their contract, whether Bandera Co–Op was estopped by its oral agreements, whether Gilchrist had tendered rental payments which Bandera Co–Op in bad faith refused to accept, and *whether Bandera Co–Op had caused damages to Gilchrist by deception, bad faith, negligence, and breach of contract.*[3]

Second, in his statement of error under his argument and authorities, Gilchrist states:

> The trial court erred by entering judgment as a matter of law that the termination of the written contract entitled Bandera Co–Op to judgment on all issues. *There were fact issues as to* the acceptance of the written contract, the existence of an oral contract, estoppel, waiver, payment, fraud, and *Gilchrist's counterclaim for damages.*[4]

Other than these statements, Gilchrist's brief contains no argument or authorities on the counterclaim issue.

### PROPRIETY OF THE SUMMARY JUDGMENT AS TO BANDERA'S CLAIMS

Gilchrist does not challenge the legal sufficiency of Bandera's motion or proof on its claim. He instead challenges the summary judgment in this respect only in the light of the factual assertions made in his response and supported by his affidavit. Bandera counters that Gilchrist's response and affidavit were not timely filed and, therefore, are not part of the summary judgment record and may not be considered by this court in determining the propriety of the summary judgment on Bandera's claims. We agree and would so hold.

Absent leave of court, a response to a motion for summary judgment is due at least seven days before the date set for the hearing. TEX.R.CIV.P. 166a(c); *Sosa v. Central Power & Light,* 909 S.W.2d 893 (Tex.1995). Therefore, as conceded by Gilchrist in his motion for leave to file a late response, his response and affidavit were untimely. As noted above, the record before us does not contain an order on Gilchrist's motion for leave to file a late response. Accordingly, Gilchrist's response is a "nullity," and we presume it was not considered by the trial judge. *E.g., Pinckley v. Gallegos,* 740 S.W.2d 529, 532 (Tex.App.—San Antonio 1987, writ denied); *see generally* TIMOTHY PATTON, TEXAS SUMMARY JUDGMENTS § 2.02[2] (Butterworth 1994 ed.).

Absent Gilchrist's untimely response and affidavit, Bandera's motion and proof conclusively and as a matter of law establish that it was entitled to summary judgment on its claims, as Gilchrist impliedly concedes. We would therefore affirm the summary judgment against Gilchrist on Bandera's claims.

### PROPRIETY OF THE SUMMARY JUDGMENT AS TO GILCHRIST'S COUNTERCLAIMS

A trial court's error in granting relief in excess of that requested by a motion for summary judgment is not "fundamental." *Mafrige,* 866 S.W.2d at 592. Accordingly, the error must be preserved before it can form a basis for a reversal. *See id.*

To preserve the error in granting a summary judgment when fact issues are presented, only one point of error is needed: "The trial court erred in granting the motion for summary judgment." *Malooly Bros., Inc.,* 461 S.W.2d at 121. When a *Malooly* point of error is brought forward, it is sufficient "to comply with Rule 418, Texas Rules of Civil

---

**2.** *Malooly Bros., Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex.1970).

**3.** Emphasis added and, for ease of reading, all capitals altered to upper and lower case.

**4.** Emphasis added and, for ease of reading, all

Procedure [5] and *to allow argument* as to all the possible grounds upon which summary judgment should have been denied." *Id.* at 121 (emphasis added). Therefore, while a broad *Malooly* point of error satisfies the requirement for a point of error under Rule 74(d) as to the sufficiency of a motion for summary judgment, it does not dispense with the need for argument and authorities under Rule 74(f). Nor does a *Malooly* point of error, which attacks the propriety of a summary judgment on the grounds stated in the motion, dispense with the need for a point of error attacking the granting of summary judgment on a claim not addressed by the motion. *Yiamouyiannis v. Thompson,* 764 S.W.2d 338, 342 (Tex.App.—San Antonio 1988, writ denied), *cert. denied,* 493 U.S. 1021, 110 S.Ct. 722, 107 L.Ed.2d 742 (1990).[6]

One issue before this court, therefore, is whether Gilchrist's brief is sufficient to preserve error as to the trial court's granting a summary judgment against him on his counterclaims and, if not, whether to order a rebriefing pursuant to *Inpetco, Inc. v. Texas American Bank/Houston N.A.,* 729 S.W.2d 300 (Tex.1987). In our view, Gilchrist's brief adequately raises the error in the unusual context presented, *i.e.,* a four-page brief containing only one issue (the propriety of the summary judgment) and an error that is now established Texas law. *E.g., McConnell v. Southside I.S.D.,* 858 S.W.2d 337 (Tex.1993).[7] For the same reasons, we would not order rebriefing. We would simply consider the merits of the complaint and reverse and remand the judgment insofar as it disposes of Gilchrist's counterclaims. *See Mafrige,* 866 S.W.2d at 591–92. In this respect, therefore, we concur in the majority's judgment.

### DISPOSITION

Finally, we get to the substance of our disagreement with the majority—remanding the entire case rather than affirming that part of the judgment dealing with Bandera's claims and reversing and remanding that part of the judgment disposing of Gilchrist's counterclaims.

Before *Mafrige,* Texas law was unclear as to the proper disposition of a summary judgment that grants relief in excess of that requested. *See, e.g., Uribe v. Houston Gen. Ins. Co.,* 849 S.W.2d 447, 451 (Tex.App.—San Antonio 1993, no writ) (Peeples, J., concurring "with some reluctance"). As recognized by Justice Peeples in *Uribe,* the supreme court's *"judgments* have not always corresponded precisely to its *language." Id.* (emphasis in original). For instance, the court stated in *Chessher v. Southwestern Bell Tel. Co.,* 658 S.W.2d 563 (Tex.1983), that "it was improper for the court of appeals to affirm *as to the unaddressed causes of action,"* but it "reversed and remanded the entire case to the trial court." *Uribe,* 849 S.W.2d at 451 (emphasis in original). Similarly, in *Teer v. Duddlesten,* 664 S.W.2d 702 (Tex.1984), the court stated that "the correct approach in such cases is to 'remand for a trial of the untried [i.e. unaddressed] issue,'" but it appeared to reverse and remand the judgment in its entirety. *Uribe,* 849 S.W.2d at 451 (quoting *Teer,* 664 S.W.2d at 704–05). Confronting this confusing state of the law some eight months before *Mafrige* issued, Justice Peeples reluctantly concluded that the court should follow the supreme court's actions, rather than its language, and reverse and remand the entire case. *Uribe,* 849 S.W.2d at 451.

The Fourteenth Court of Appeals had earlier reached the same conclusion in *Ross v.*

---

capitals altered to upper and lower case.

**5.** This aspect of former Rule 418, Tex.R.Civ.P., is now located in Rule 74(d), Tex.R.App.P.

**6.** Since this case has been decided en banc, and all justices agree that the summary judgment presents reversible error as to Gilchrist's counterclaims, it would appear that *Yiamouyiannis'* holding on the necessity of a specific point of error complaining of excess relief has been overruled, not expressly but sub silentio—the same

course followed by the *Mafrige* Court with respect to several of its prior writings (as well as those of the courts of appeals) on the effect of a Mother Hubbard clause in a summary judgment.

**7.** *Cf. Silk v. Terrill,* 898 S.W.2d 764, 766 (Tex. 1995) ("Judicial economy is not served when a case, ripe for decision, is decided on a procedural technicality of this nature. In the interests of justice and fair play, cases should be decided on the merits when deficiencies of this nature can be easily corrected.").

*Arkwright Mut. Ins. Co.*, 834 S.W.2d 385, 390–91 (Tex.App.—Houston [14th Dist.] 1992), *rev'd sub nom. Mafrige v. Ross*, 866 S.W.2d 590 (Tex.1993). In *Ross*, the trial court issued a series of eight summary judgment orders that granted relief as to causes of action not addressed in the motions for summary judgment. *Ross*, 834 S.W.2d at 388–89. However, each of the summary judgment orders also stated that the plaintiff take nothing from the defendant. *Mafrige*, 866 S.W.2d at 591. When the plaintiff appealed these take-nothing judgments, the court of appeals dismissed the appeal for want of jurisdiction, reasoning that the orders did not collectively constitute a final, appealable judgment because they did not and could not properly dispose of all issues and parties. *Ross*, 834 S.W.2d at 394. The court further reasoned that decreeing that the plaintiff take nothing was not the functional equivalent of a Mother Hubbard clause denying all relief not expressly granted. *Id.*

The supreme court reversed, holding that the trial court's orders, collectively, constituted a final, appealable judgment, because the take-nothing clauses evidenced the trial court's intent to dispose of all claims. *Mafrige*, 866 S.W.2d at 592. Incredibly, the majority reads *Mafrige* as consistent with the course adopted in *Uribe* and similar cases. In support of its disposition, the majority relies upon the *Mafrige* Court's statement that "[i]f the judgment grants more relief than requested, ·it should be reversed and remanded." *Mafrige*, 866 S.W.2d at 592.

However, the majority plucks this statement out of context and, in so doing, distorts its meaning.

In *Mafrige*, the supreme court first discussed the confusion created by "*Schlipf v. Exxon Corp.*, 644 S.W.2d 453 (Tex.1982), and the analysis and application of that decision in *Teer*. . . ." *Mafrige*, 866 S.W.2d at 591. It then reviewed the facts and holdings in both cases. In so doing, the court characterized its disposition in *Teer* as "sever[ing] the nonmoving party and remand[ing] for trial of its claims." *Id.* at 592 (emphasis added). The court then went on to state:

> **We are of the opinion that the better view is that expressed in *Schlipf* and manifested by the actual result in *Teer.*** If a summary judgment order appears to be final, as evidenced by the inclusion of language purporting to dispose of all claims or parties, the judgment should be treated as final for purposes of appeal. *If the judgment grants more relief than requested, it should be reversed and remanded, but not dismissed.*

*Id.* (emphasis added). To faithfully interpret the italicized sentence, therefore, we must recognize and give effect to the first, bolded sentence of the paragraph and the supreme court's earlier characterization of its disposition in *Teer*. Doing so necessarily leads to the conclusion that *Mafrige* represents a sub silentio overruling of this aspect of *Uribe* and all other cases holding similarly.[8] If a sum-

---

8. With two exceptions, the supreme court decisions cited by the majority were decided before *Mafrige*. The exceptions are *Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508 (Tex.1995), and *Martinez v. Humble Sand & Gravel*, 875 S.W.2d 311, 313–14 (Tex.1994). Both are completely inapposite. The issue in *Martinez* was "what severance order produces a final judgment" for purposes of the appellate timetable. *Martinez*, 875 S.W.2d at 312. This issue arose because the initial summary judgment did not contain a Mother Hubbard clause; the clause was instead placed in the trial court's severance order, which "purported to allow (if not invite) additional defendants, after the date of the order, to file late summary judgment motions and become severed into the appealable judgment." *Id.* at 313. The court held that, despite the Mother Hubbard clause, the severance order did not render any judgment final and did not start the appellate timetable as to any defendant, moving or non-

moving. *Id.* at 313–14. This holding is perfectly consistent with *Mafrige* since the summary judgment order and the severance order, when read together, did not clearly evidence the trial court's intent to render a final judgment at the time of the severance order. *See Mafrige*, 866 S.W.2d at 592. Nothing in *Martinez* purports to modify *Mafrige* absent such an unusual (and potentially unfair) severance order. *Park Place* is likewise inapposite; the summary judgment there involved did not contain a Mother Hubbard clause, as the court noted. *Park Place Hosp.*, 909 S.W.2d at 510.

Of the five decisions from this court cited by the majority, four predate *Mafrige* and were in that respect overruled sub silentio by *Mafrige*. The fifth case, *Qualia v. Qualia*, 878 S.W.2d 339 (Tex.App.—San Antonio 1994, writ denied), was issued after *Mafrige*, but it did not involve the proper disposition of a summary judgment that grants excess relief. *See Qualia*, 878 S.W.2d at

mary judgment is improper as to one or more claims or parties, we are to "sever" and reverse and remand only that part of the judgment that erroneously disposes of those claims or parties.

In short, the supreme court's mandate in *Mafrige* is to follow its example in *Teer*—i.e., rule on the merits of the summary judgment and reverse and remand only those aspects of the judgment that are improper, if any. That course of action is, in fact, precisely the course followed by the court of appeals on remand in *Mafrige*, despite its disagreement with the supreme court's holding. *See Ross v. Arkwright Mut. Ins. Co.*, 892 S.W.2d 119, 123 n. 1, 134 (Tex.App.—Houston [14th Dist.] 1994, no writ).[9] It is also the course of action routinely followed by this court in summary judgment cases not involving excess relief.[10] Why then does the majority so vehemently decry treating excess relief cases in the same

fashion? The majority cites several, equally unpersuasive grounds.

First, despite its recognition that the judgment in this case is final and appealable under *Mafrige*, the majority persists in referring to it as an "interlocutory partial summary judgment" and in fact states that it reverses and remands so that the trial court may "dispose of all the issues and parties in a proper final appealable judgment." However, as the majority now recognizes,[11] we have jurisdiction over this appeal because the trial court's judgment is final and appealable; the judgment simply contains reversible error as to Gilchrist's counterclaims. To call the judgment an "interlocutory partial summary judgment" is thus incorrect and no justification for treating it differently than any other judgment that is correct in some respects and erroneous in others.

It is likewise no justification for the majority to say that "the judgment or decree the

342. *Employers Casualty Co. v. Graham*, No. 04–92–00650–CV (Tex.App.—San Antonio, Jan. 26, 1994, writ denied), is the only post-*Mafrige* decision involving excess relief ever cited by the majority in any draft of its opinion. However, the opinion is not published and, therefore, may not be cited by counsel or a court as authority. Tex.R.App.P. 90(i). *Graham* has, therefore, quite properly dropped out of the majority's opinion. Nonetheless, *Graham* is wrong in this respect and should be overruled by this court sitting en banc, as we do in this case. However, since Rule 90(i) does not prohibit the use of unpublished opinions for a purpose other than as authority, we attach the unpublished opinions in *Graham* and the mandamus proceeding that ensued as appendices to this opinion to demonstrate our point regarding the harm that is threatened by a summary reversal of a partial summary judgment. *See Amwest Surety Ins. Co. v. Flores*, No. 04–95–00568–CV, 1995 WL 624618 (Tex.App.—San Antonio Oct. 25, 1995, orig. proceeding) (not designated for publication).

9. The "some authority" relied upon by this dissent is not only *Mafrige*, both in the supreme court and on remand, but the interpretation placed on *Mafrige* by virtually every other court of appeals to consider the issue. *See City of Garland v. Booth*, 895 S.W.2d 766, 771 (Tex.App.—Dallas 1995, writ denied); *Ross v. Arkwright Mut. Ins. Co.*, 892 S.W.2d 119, 134 (Tex.App.—Houston [14th Dist.] 1994, no writ); *Welch v. McDougal*, 876 S.W.2d 218, 226 (Tex.App.—Amarillo 1994, writ denied); *Posey v. Southwestern Bell Yellow Pages*, 878 S.W.2d 275, 281 (Tex.App.—Corpus Christi 1994, no writ) (all affirming summary judgment in part and revers-

ing and remanding in part when relief that was not specifically requested nonetheless granted); *but see Rose v. Kober Fin. Corp.*, 874 S.W.2d 358 (Tex.App.—Houston [14th Dist.] 1994, no writ); *Hinojosa v. Hinojosa*, 866 S.W.2d 67 (Tex.App.—El Paso 1993, no writ). Thus the majority's holding in this case will particularly affect excess relief summary judgment cases transferred to this court from other courts of appeals in the docket equalization program. *See In the Matter of A.L.S.*, 915 S.W.2d 114, 117 (Tex.App.—San Antonio 1996, n.w.h.).

10. *See, e.g., Antu v. Eddy*, 914 S.W.2d 166 (Tex.App.—San Antonio, 1995, no writ) (per curiam); *Burnap v. Linnartz*, 914 S.W.2d 142 (Tex.App.—San Antonio 1995, no writ); *Newman v. Tropical Visions, Inc.*, 891 S.W.2d 713 (Tex.App.—San Antonio 1994, writ denied); *Hinerman v. Gunn Chevrolet*, 877 S.W.2d 806 (Tex.App.—San Antonio 1994), *rev'd in part on other grounds*, 898 S.W.2d 817 (Tex.1995); *Hancock v. City of San Antonio*, 800 S.W.2d 881 (Tex.App.—San Antonio 1990, writ denied) (all reversing summary judgment in part).

11. *Compare Stroud v. VBFSB Holding Corp.*, 901 S.W.2d 657, 661 (Tex.App.—San Antonio 1995) (because majority believed severance was improper and, as a result, summary judgment did not dispose of all issues, it dismissed appeal), *superseded on rehearing by*, 917 S.W.2d 75 (Tex.App.—San Antonio, 1996 n.w.h.) *with Rosales v. H.E. Butt Groc. Co.*, 905 S.W.2d 745, 751–52 (Tex.App.—San Antonio 1995, writ denied) (summary judgment final under *Mafrige* because it purported to dispose of all issues and parties).

court below should have rendered," TEX. R.APP.P. 81(c), "was a partial interlocutory summary judgment, which is not final or appealable." While this statement is true, it is nonsense. By including a Mother Hubbard clause, the trial court rendered a final, appealable judgment. This fact, coupled with the reversible error involved in disposing of Gilchrist's counterclaims, necessarily means we cannot render the judgment the trial court should have rendered, *i.e.*, an "interlocutory" partial summary judgment. Rather, we have two choices: (1) we can affirm as to Bandera's claims and reverse as to Gilchrist's counterclaims; or (2) we can reverse the entire judgment.

If we affirm and reverse the judgment in relevant part, as mandated by the supreme court in *Mafrige*, we will effectively render "the judgment or decree the court below should have rendered," *i.e.*, a partial summary judgment against Gilchrist on Bandera's claims. And, since we will review the summary judgment *de novo* regardless of whether review occurs now or later, Gilchrist will not be prejudiced by that course of action. But if we reverse and remand the entire judgment, as the majority has done, we will not render a partial summary judgment, and Bandera will be severely prejudiced because it will lose its partial summary judgment and Gilchrist will be permitted a second bite at the apple.[12] In short, as a result of the majority's unusual and unauthorized disposition, Bandera is in worse shape than it would have been before *Mafrige*. At least in the pre–*Mafrige* era, this court would have dismissed Gilchrist's appeal of the summary judgment and left Bandera's partial summary judgment intact.

The majority also characterizes this dissent as a misinterpretation and expansion of *Mafrige* and an attempt to "revolutionize appellate summary judgment procedures, but also urges the piecemeal disposition of lawsuits."[13] This accusation is unwarranted and misdirected. As pointed out above, the circumstances in this case are no different from those in *Mafrige*—the trial court granted summary judgment as to claims that were not encompassed by the summary judgment motion. And it was the Texas Supreme Court, not these dissenting justices, that wrote that the proper disposition in such a case is to "sever" and "remand" that part of the judgment that grants excess relief, as the supreme court itself did in *Teer*. *See Mafrige*, 866 S.W.2d at 592.

The majority also seems to base its decision to treat excess relief cases differently than other cases on a purported absence of authority for "*sua sponte* sever[ing] the counterclaims in order to deal [ ] with the merits of what, in fact, is an interlocutory partial summary judgment." In so stating, the majority evidences its confusion in at least three respects. First, the judgment in this case is not interlocutory. Second, in stating that it "can find no authority for such a holding," the majority completely ignores the express language in *Mafrige* quoted above regarding its disposition in *Teer*. *Mafrige*, 866 S.W.2d at 592. Finally, by conceptualizing a "severance" on appeal as though it were the same as a severance in the trial court, the majority is simply wrong. To sever on appeal means to affirm a judgment in part and to reverse it in part, as the supreme court did with respect to the parties in *Teer* and as the court of appeals did with respect to the claims in *Mafrige* on remand; in that manner, this court effectuates a "sev-

---

12. The majority states that "[t]here is no reason why a simple reading of this opinion by the trial court would necessarily result in a deprivation of the partial summary judgment...." We disagree. "[A] reversed order or judgment is generally nullified and ... no right can be asserted under a judgment that has been reversed." *Starnes v. Holloway*, 779 S.W.2d 86, 95 (Tex. App.—Dallas 1989, writ denied).

13. The majority itself "revolutionizes appellate summary judgment procedures" by holding that "[a] 'Mother Hubbard' clause does not in and of itself create a final and appealable judgment...." While the majority is bound by its holding in *Rosales, supra* n. 11, it achieves a similar, summary result as that in *Stroud, supra* n. 11, by reversing and remanding the entire case. The bottom line, of course, is that practitioners include a Mother Hubbard clause in their summary judgments at their peril: if the summary judgment grants excess relief, the successful movant will lose even its partial summary judgment on appeal, regardless of the merits.

erance" on appeal every time it affirms some aspect of a judgment, while reversing another. *See supra* n. 10. Nowhere does the majority explain why the dire consequences it envisions in excess relief cases do not already plague this court in cases such as those cited in footnote 10 of this dissent— because it cannot. The fact is that when this court affirms a judgment in part and reverses it in part, we do not "improperly assume the normal duties of a trial court"; we do not assign new trial court cause numbers; and we do not engender "the specter of innumerable final judgments stemming from one single lawsuit" or "enormous judicial confusion." We just do our job and follow the dictates of Rule 81.

Finally, the majority asserts that, "[u]nder the holding of the dissent, an unnecessary confusion would be created regarding the proper application of the appellate timetables which would appear to conflict with the language of the supreme court in *Park Place Hospital.*" Once again, however, the majority's accusation is completely unfounded. One of the principal reasons for the holding in *Mafrige* was to ensure certainty in computing appellate timetables. *See Mafrige,* 866 S.W.2d at 592 ("[L]itigants should be able to recognize a judgment which on its face purports to be final, and courts should be able to treat such a judgment as final for purposes of appeal."). And the uncertainty involved in *Martinez* did not arise out of a Mother Hubbard clause in a summary judgment but out of a Mother Hubbard clause contained in a severance order that contemplated additional summary judgments as to additional defendants.[14] Indeed, it is the majority that creates uncertainty in the cases arising in our 32–county district and those transferred to this court under the docket equalization program. Will this court follow *Mafrige,* as it seemed to do in *Rosales, supra*

n. 11, or will it ignore *Mafrige,* as it did in *Stroud, supra* n. 11, and as it does in this case? Is this just a counterclaim case or does the majority's holding encompass all excess relief cases?

## CONCLUSION

We have the power and the duty to reverse and remand only that part of the judgment that .denies Gilchrist relief on his counterclaims and, in all other respects, affirm. We would so hold. We would further direct the trial court on remand to determine which of Gilchrist's counterclaims survive the summary judgment on Bandera's breach of contract claim and otherwise proceed in accordance with this opinion.

Litigants should not be forced to appeal to the supreme court to ensure that this court follows indistinguishable supreme court precedent. And the supreme court should not be asked to expend its limited resources reversing this court when it has already made its mandate clear. In all likelihood, however, this case will not be the one in ten that makes it into the supreme court. Bandera—quite understandably—may not go to the expense and trouble involved in seeking supreme court review. Or the supreme court may determine that the case does not warrant it—again, quite understandably. In either event, to reverse and remand the entire case, as the majority does, effectively deprives Bandera of its partial summary judgment on its claims, forces Bandera to resubmit the identical motion and proof, and affords Gilchrist a second bite at the apple. That result ignores binding supreme court precedent, and it is not "just," "fair," or "equitable." *See* TEX.R.CIV.P. 1. We therefore dissent from the majority's judgment insofar as it reverses the summary judgment on Bandera's claims.

---

**14.** In fact, if the initial summary judgment in *Martinez* had contained a Mother Hubbard clause, no uncertainty would have resulted: the summary judgment would have been final as to all claims and all parties on the date the initial summary judgment was signed, and the appellate timetable would have commenced on that date for all involved. On appeal, the court would have reversed that part of the judgment granting summary judgment to the non-moving defendants and reviewed the merits of the judgment as to the moving defendant—precisely the course of action mandated by the supreme court in *Mafrige* and adopted by the Fourteenth Court of Appeals on remand.

APPENDIX A

## COURT OF APPEALS
## FOURTH COURT OF APPEALS
## DISTRICT OF TEXAS
## SAN ANTONIO

### OPINION

Appeal No. 04–92–00650–CV

Employers Casualty Company, Appellant

v.

John Frank Graham, Cherie Canion
Graham, Leonel M. Valadez, and
Zapata Ready Mix, Appellees

Appeal from the 49th District Court of
Zapata County
Trial Court No. 2768

Honorable Manuel R. Flores, Judge Presiding

Opinion by: Alma L. López, Justice

Sitting: Alfonso Chapa, Chief Justice, concur
with results

Orlando Garcia, Justice

Alma L. López, Justice

Delivered and Filed: January 26, 1994

REVERSED & REMANDED.

An insurance company appeals from a summary judgment which established its liability pursuant to an insurance contract. We reverse the summary judgment and remand to the trial court.

### FACTS

Vidaurri Trucking Company (Vidaurri) had been hired to build a road and to clear a pad for an oil drilling rig. To complete the job, Vidaurri hired Zapata Ready Mix (Zapata) to haul caliche to the work site. One day at the work site, a Zapata truck ran over John Graham thereby injuring him. Graham and his wife sued Vidaurri and Zapata for negligence claiming respondeat superior and loaned servant. The trial court granted Vidaurri's motion for summary judgment and severed the cause of action from the remaining claim against Zapata. A bench trial re-sulted in a $520,000.00 judgment against Zapata and the truck driver.

Vidaurri was insured by Employers Casualty Company (Employers). Employers denied coverage to Zapata. The Grahams, Zapata, and the Zapata truck driver filed suit against Employers for negligence and breach of contract for denying coverage and for failing to provide a defense.

The Grahams and Zapata filed a motion for summary judgment addressing Employers' liability pursuant to Vidaurri's insurance contract and Texas motor carrier law; the motion was denied. Employers filed a motion for summary judgment asserting collateral estoppel. The Grahams and Zapata filed a motion to reconsider their motion for summary judgment. The trial court considered the motion to reconsider and Employers' motion for summary judgment together. The Graham–Zapata summary judgment motion (Zapata summary judgment motion) was granted but Employers' motion for summary judgment was denied.

Employers files this appeal.

### APPELLATE JURISDICTION

Employers alleges the trial court erred by granting Zapata's summary judgment and by failing to grant its motion for summary judgment.

"In order to be a final, appealable summary judgment, the order granting the motion must dispose of all parties and all issues before the court. If the order does not dispose of all issues and all parties, it is interlocutory and therefore not appealable absent a severance." *Mafrige v. Ross,* 37 Tex.Sup.Ct.J. 82, 83 [866 S.W.2d 590] (Oct. 27, 1993) (citation omitted).

Jurisdiction can neither be conferred by agreement nor waived. *Duncan v. Tweedy,* 582 S.W.2d 614, 615 (Tex.Civ.App.—Dallas 1979, no writ). "The question of jurisdiction is fundamental and can be raised at any time." *Tullos v. Eaton Corp.,* 695 S.W.2d

568, 568 (Tex.1985). It is reversible error for an intermediate appellate court to erroneously exercise its jurisdiction. *See Tullos,* 695 S.W.2d at 568–69. Therefore, we consider whether this cause is a final, appealable summary judgment.

The Grahams, Zapata, and the Zapata truck driver pleaded in their Second Amended Original Petition that by denying Zapata and the truck driver coverage for Graham's claim and by failing to provide a defense, Employers "committed acts of negligence, negligence per se violations of Texas Deceptive Trade Practice and Unfair Claim Practices Acts, failure to act in good faith and deal fairly required in connection with insurance contracts, and gross negligence and breach of contract in Zapata County, Texas." The plaintiffs prayed for both actual and exemplary damages.

The Zapata summary judgment motion alleged that Zapata and its driver were insureds under Vidaurri's insurance contract pursuant to either the Texas motor carrier laws or pursuant to the contract's hired automobile endorsement.

Employers responded to Graham's motion for summary judgment by arguing the court was collaterally estopped from granting the motion: Vidaurri's summary judgment established that Zapata was an independent contractor. Consequently, Zapata was not a hired or leased vehicle pursuant to the hired automobile endorsement. Alternatively, Zapata factually does not fall within the hired automobile endorsement. Finally, article 911B at most makes Vidaurri liable for Zapata's negligent acts but does not make Employers the insurer of Zapata. Article 911B was not pleaded in the first cause of action; the finding of no liability collaterally estops this assertion now.

Employers filed a motion for summary judgment alleging the same collateral estoppel argument made in its response to Zapata's summary judgment motion.

The trial court denied Zapata's summary judgment motion not because of a question of law but because a fact issue exists. The Grahams and Zapata filed a motion to reconsider their motion for summary judgment. The trial court considered the motion to reconsider and Employers' summary judgment motion together. The Zapata summary judgment motion was granted but Employers' summary judgment motion was denied. The final judgment awarded the Grahams the $500,000.00 policy limit; attorney fees; prejudgment and post-judgment interest; and included a Mother Hubbard clause reciting "all relief not specifically granted herein is denied."[1]

The summary judgment order appears to be final, as evidenced by the Mother Hubbard clause. The judgment, however, grants more relief than requested: In essence, the summary judgment motions addressed only whether Zapata and its driver had insurance coverage. The summary judgment motions, however, did not address whether Employers was negligent, grossly negligent, or violated the DTPA by denying coverage to Zapata and its driver: all contentions raised by the Graham–Zapata petition.

The Texas Supreme Court has held that:

> If a summary judgment order appears to be final, as evidenced by the inclusion of language purporting to dispose of all claims or parties, the judgment should be treated as final for purposes of appeal. If the judgment grants more relief than requested, it should be reversed and remanded, but not dismissed.

*Mafrige,* 37 Tex.Sup.Ct.J. at 84 [866 S.W.2d at 592]. Consequently, we reverse and remand the cause.

ALMA L. LOPEZ,
Justice

DO NOT PUBLISH.

---

1. Recognized Mother Hubbard clauses include: all relief not expressly granted is denied; the summary judgment is granted as to all claims asserted by plaintiff; and plaintiff takes nothing against defendant. *See Mafrige v. Ross,* 37 Tex. Sup.Ct.J. at 83 n. 1 [866 S.W.2d at 590 n. 1].

APPENDIX B

COURT OF APPEALS
FOURTH COURT OF APPEALS
DISTRICT OF TEXAS
SAN ANTONIO

OPINION

Cause No. 04–95–00568–CV

Amwest Surety Insurance
Company, Relator,

v.

The Honorable Manuel R.
Flores, Respondent.

From the 49th District Court of Zapata
County
Trial Court No. 2768
ON RELATOR'S PETITION FOR
WRIT OF MANDAMUS

Opinion by: Catherine M. Stone, Justice

Concurring opinion by: Paul W. Green, Justice

Sitting: Alma L. Lopez, Justice
Catherine M. Stone, Justice
Paul W. Green, Justice

Delivered and Filed: October 25, 1995

PETITION FOR WRIT OF MANDAMUS
DENIED

The relator is the surety for a supersedeas bond. The issue in this original proceeding is whether the trial court, in applying the supersedeas bond to the amended final judgment, committed a clear abuse of discretion which provided no adequate remedy by appeal to the relator. We find that relator has an adequate remedy by appeal, therefore, we deny the petition for writ of mandamus.

### Procedural History

On June 13, 1992, the trial court entered an interlocutory summary judgment in favor of plaintiffs, after which plaintiffs waived their remaining claims and requested entry of a final judgment. On July 20, 1992, the court entered a judgment captioned "Final Judgment" granting plaintiffs a million dollar money judgment against Employers Casual-

ty Company. The judgment contained the briefest of "Mother Hubbard" clauses. After its motion for new trial was denied, Employers Casualty filed a supersedeas bond in the amount of $1,239,130.50 on December 3, 1992, seeking appellate review of the judgment. The record on appeal, however, did not include the motion for final judgment in which the waiver of other claims occurred. On January 27, 1994, this court reversed and remanded the case for want of jurisdiction because the judgment appeared to grant more relief than requested in the motion for summary judgment. Following a denial of plaintiffs' application for writ of error to the supreme court, our mandate to reverse and remand issued on December 29, 1994.

During the pendency of the appeal, Employers went into receivership, and a receiver appointed by the Texas Commissioner of Insurance made an appearance on behalf of Employers in the post-trial proceedings. In January 1995, Employers filed a motion to release the supersedeas bond and obtained an *ex parte* order to that effect from the trial court. On January 23, 1995, when plaintiffs received notice of the order releasing the bond, they immediately obtained a stay of the release from the court until the issue concerning the supersedeas bond could be properly determined.

Plaintiffs then filed another motion to enter final judgment. This motion again waived any remaining claims and sought entry of judgment based upon the summary judgment of June 13, 1992. This time, the judgment recited the waiver of plaintiffs' remaining claims, and incorporated the 1992 judgment into an amended final judgment which was entered on February 28, 1995. The time for appeal on the amended judgment expired and plaintiffs moved to apply the 1992 supersedeas bond to the amended final judgment pursuant to the turnover statute, Tex.Civ.Prac. & Rem.Code § 31.002(b)(2). Following a hearing at which counsel for the plaintiffs and the surety appeared, the trial court ordered the supersedeas bond applied to the 1995 judgment. On July 27, 1995, relator sought leave to file a petition for writ of mandamus to order the trial court to rescind its order of July 17,

1995, and to release the supersedeas bond to the surety. On August 4, 1995, relator also filed a notice of appeal.

### Standard of Review

Mandamus will issue only to correct a clear abuse of discretion or violation of a duty imposed by law when that abuse cannot be remedied by appeal. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992). Jurisdiction by this avenue is available in limited circumstances and the burden of showing that these two requirements are met is a heavy one. *See Lutheran Social Serv., Inc. v. Meyers,* 460 S.W.2d 887, 889 (Tex.1970). The requirement of an inadequate legal remedy is met only when the parties are in danger of permanently losing substantial rights. *Canadian Helicopters Ltd. v. Wittig,* 876 S.W.2d 304, 306 (Tex.1994).

### Adequate Remedy at Law

Shortly after filing the instant application for extraordinary relief, relator also perfected its appeal on the turnover order which is the subject of both proceedings pending in this court. Nevertheless, relator stated in its mandamus petition that it has no adequate remedy on appeal because if it does not comply with the turnover order it may be subject to contempt of court. *See Hennessy v. Marshall,* 682 S.W.2d 340, 343 n. 1 (Tex. App.—Dallas 1984, orig. proceeding) (writ issued in light of potential contempt proceedings for failure to obey void order). The *Hennessy* case is distinguishable on its facts. The relator in *Hennessy* had not perfected an appeal at the time the mandamus was submitted, as relator has done in this case.

Real parties concede that the surety has standing to appeal the turnover order. It is clear that third parties to a turnover proceeding have a right to appeal from a post-judgment turnover order to protect their affected property interests. *Schultz v. Fifth Judicial District Court of Appeals,* 810 S.W.2d 738, 740 (Tex.1991) (orig. proceeding); *International Paper Co. v. Garza,* 872 S.W.2d 18, 19 (Tex.App.—Corpus Christi 1994, orig. proceeding). Moreover, jurisdiction over any potential contempt proceedings for failure to obey Judge Flores' order lies with this court, not the trial court, while the appeal is pending. *See Schultz,* 810 S.W.2d at 740. No such proceedings have been insti-

tuted at this time. Consequently, the majority holds that relator has an adequate remedy at law. Petition for writ of mandamus is denied.

CATHERINE M. STONE
Justice

Do not publish

### COURT OF APPEALS
### FOURTH COURT OF APPEALS
### DISTRICT OF TEXAS
### SAN ANTONIO

### CONCURRING OPINION

Cause No. 04–95–00568–CV

Amwest Surety Insurance
Company, Relator,

v.

The Honorable Manuel R.
Flores, Respondent.

From the 49th District Court of Zapata County

Trial Court No. 2768

Opinion by: Catherine M. Stone, Justice

Concurring Opinion by: Paul W. Green, Justice

Sitting: Alma L. Lopez, Justice
Catherine M. Stone, Justice
Paul W. Green, Justice

Delivered and Filed: October 25, 1995

I am disturbed by the respondent's attempt to apply the relator's bond to a new judgment by way of a third-party turnover order. Once the July 20, 1992 judgment secured by relator's supersedeas bond was reversed by this court, *Employers Cas. Co. v. Graham,* No. 04–92–00650–CV (Jan. 26, 1994) (not designated for publication), there was no final judgment to secure—the relator's supersedeas bond was discharged as a matter of law. *See Edlund v. Bounds,* 842 S.W.2d 719, 732 (Tex.App.—Dallas 1992, writ denied) (surety discharged because there was no final judgment); *Resolution Trust Corp. v. Chair King, Inc.,* 827 S.W.2d 546, 550 (Tex. App.—Houston [14th Dist.] 1992, no writ) ("a surety is not liable where the judgment awarding damages is reversed on appeal").

TEX.R.APP.P. 47 provides that execution on a final judgment may be suspended by the filing of "a good and sufficient bond ... conditioned that the judgment debtor shall prosecute his appeal ... with effect...." The relator in this case has fully satisfied the conditions of its bond. The underlying appeal has been prosecuted "with effect;" the judgment was reversed by this court. The relator has no further obligation on the bond.

Real parties argue that the appeal was not prosecuted "with effect" because this court held that the underlying judgment was interlocutory and failed to reach the merits of the appeal, citing *Lloyds Cas. Insurer v. McGee,* 141 Tex. 384, 174 S.W.2d 314 (1943). Interestingly, *McGee* involves facts (and names) very similar to this case: McGee's judgment against the defendant, United Employers Casualty Company, was secured by a Lloyds Casualty supersedeas bond while it was being appealed. United Employers failed to timely perfect its appeal, leading to the dismissal of the appeal. By the time the appeal was dismissed, United Employers was insolvent. McGee then sought to collect his judgment against the supersedeas bond. The supreme court held that because United Employers had failed to prosecute its appeal with effect, Lloyds Casualty was liable on the bond for the amount of the judgment. *McGee,* 174 S.W.2d at 316. *McGee,* of course, is distinguishable because the judgment of the trial court was left intact—the appeal was simply dismissed. In this case, however, the judgment below was vacated; it was reversed and the entire cause was remanded, thus extinguishing the liability of the surety.

Under the circumstances of this case, the facts and law permitted the trial court to make but one decision—discharge the surety on the bond. There was no discretion to exercise in this instance. *See Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985). That notwithstanding, by signing the turnover order the respondent has erroneously facilitated the real parties' attempt to recover on a supersedeas bond already discharged by law. There is no basis in the facts or the law to support the respon-

dent's action. Thus, it is a clear abuse of discretion. *Id.*

But in order to be eligible for mandamus relief, the relator must establish that it has no adequate remedy by appeal. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992); *Johnson,* 700 S.W.2d at 917. That requirement has not been satisfied in this case. Indeed, the relator admits that it has appealed the turnover order made the basis of its complaint here.

As much as I disagree with the respondent's attempt to apply the relator's bond to the February 28, 1995 judgment, it is not subject to a mandamus order " 'where the law has provided another plain, adequate, and complete remedy.' " *Canadian Helicopters Ltd. v. Wittig,* 876 S.W.2d 304, 306 (Tex. 1994) (quoting *Aycock v. Clark,* 94 Tex. 375, 60 S.W. 665, 666 (1901).

Unfortunately, the turnover order is now on appeal; otherwise, I would hope that the trial court would reconsider its July 17, 1995 order in view of the authorities cited above. But at any rate, I am satisfied that the relator has an adequate remedy by appeal of the order and thus I concur with the denial of mandamus relief.

> PAUL W. GREEN
> Justice

DO NOT PUBLISH.